HOUSING AUTHORITY OF THE TOWN OF EAST HARTFORD *v.* JOHN F. PAPANDREA, COMMISSIONER OF HOUSING
(14191)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, BORDEN
and BERDON, Js.

Argued December 3, 1991—decision released June 4, 1992

*Paul K. Pernerewski,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Ralph J. Alexander,* with whom was *John F. Sullivan,* for the appellee (plaintiff).

*Philip D. Tegeler, Nancy Hronek* and *Glenn W. Falk* filed a brief for the Connecticut Civil Liberties Union Foundation et al. as amici curiae.

GLASS, J. The plaintiff, the housing authority of the town of East Hartford, filed a two count complaint and application for a permanent injunction against the defendant, John F. Papandrea, in his official capacity as commissioner of the Connecticut department of housing,[1] seeking to enjoin him from operating a rental assistance, existing housing and housing voucher program pursuant to section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f (section 8 program) in East Hartford. The plaintiff alleged that it had exclusive statutory authority to administer a section 8 program in East Hartford. The plaintiff alleged further that the commissioner's authority to administer a section 8 program had been transferred from the Connecticut department of housing to the Connecticut housing authority by the enactment of No. 86-281 of the 1986 Public Acts, and that, therefore, the commissioner's administration of such a program in East Hartford was ultra vires. The commissioner filed a motion to dismiss on the ground that the trial court lacked subject matter jurisdiction because the plaintiff lacked standing and had failed to exhaust its administrative remedies. The trial court denied the commissioner's motion to dismiss. The trial court, after a hearing, granted the plaintiff the requested injunctive relief. The commissioner appealed to the Appellate Court from the trial court's judgment. We transferred the appeal to this court pursuant to Practice Book § 4023.

On appeal, the commissioner claims that the trial court improperly: (1) concluded that the plaintiff was not required to exhaust administrative remedies; (2) granted the plaintiff a permanent injunction prohibiting the commissioner from operating a section 8 program in East Hartford; and (3) concluded that the commissioner had acted in excess of his statutory

---

[1] Papandrea was succeeded as commissioner by Henry S. Scherer, Jr., in early 1991.

authority. We agree with the commissioner's first claim and, therefore, we reverse the judgment of the trial court.

The facts relevant to this appeal are undisputed. The section 8 program that is the subject of this litigation is a federal housing subsidy administered by the United States department of housing and urban development (HUD).[2] The purpose of the program is to assist low income families in obtaining decent, safe and sanitary rental accommodations and to promote "economically mixed housing." 42 U.S.C. § 1437f (a); see also 24 C.F.R. § 882.101. The program works essentially as follows. First, the public housing authority (housing authority) enters into an annual contribution contract with HUD. The housing authority, applying the qualification guidelines set forth in regulations promulgated by HUD, determines if an applicant qualifies for section 8 low income housing. If found to be qualified, the applicant is issued a certificate or voucher by the housing authority. The applicant then finds an acceptable rental unit and presents the certificate to the landlord. If the housing authority determines that the selected unit meets HUD's standards of habitability, that the rent is approvable and that the proposed lease complies with HUD's regulations, the housing authority approves the lease. 24 C.F.R. § 882.209. The applicant pays no more than 30 percent of his or her income toward rent and the housing authority pays the remainder from moneys received under its contract with HUD. See 42 U.S.C. §§ 1437a (a) (1) and 1437f (c) (3) (A). When the housing authority successfully places a section 8 tenant, it receives an initial placement fee as well as a payment for each month that the tenant remains in the section 8 program.

---

[2] The specific programs which are the subject of this appeal are set forth in title 24, §§ 882 and 887 of the Code of Federal Regulations.

The plaintiff administers a section 8 program in East Hartford. At the time of trial, approximately 111 tenants were participating in the plaintiff's program. The commissioner has administered a section 8 program in the state since 1976. At the time of trial, approximately 1700 rental units throughout the state had been filled by participants in the section 8 program administered by the commissioner. Since 1988, twenty-two families holding certificates issued by the commissioner have obtained housing in East Hartford.

Based on the evidence presented at the hearing, the trial court made the following findings. A public housing authority is required by HUD to utilize at least 95 percent of the certificates granted to it under its contract. Since 1988, the commissioner had administered a section 8 program in East Hartford without the permission of either the plaintiff or East Hartford's governing body. One East Hartford landlord who owned multiple units had informed the plaintiff that he would no longer rent to section 8 tenants due to late rent payments made by the commissioner. The plaintiff had a waiting list of forty-four eligible families and, had the commissioner not placed section 8 tenants in East Hartford, the plaintiff would have done so. The trial court concluded that the commissioner had acted without statutory authority in operating a section 8 program in East Hartford, and that as a result of the commissioner's actions, the plaintiff had lost fees it would otherwise have received from HUD. The trial court concluded further that the plaintiff had suffered irreparable harm and granted the plaintiff permanent injunctive relief against the commissioner.

On appeal, the commissioner argues that the trial court improperly denied his motion to dismiss made on the ground that the plaintiff had failed to exhaust its

administrative remedies.[3] The commissioner argues further that the trial court improperly concluded that he had exceeded his statutory authority in operating a section 8 program in East Hartford, and that, therefore, the trial court improperly granted the plaintiff injunctive relief. The commissioner contends that the expansion of the state's section 8 program into East Hartford is within his statutory authority and "coincides with the State's attempt to better utilize its Section 8 allocation and to help homeless people, and those families residing in 'welfare' hotels and motels, find permanent, decent, safe and sanitary dwellings." The plaintiff argues that the trial court properly concluded that the plaintiff had the exclusive right to operate a section 8 program in East Hartford and that, therefore, the trial court properly enjoined the commissioner from operating such a program. The plaintiff contends that without a permanent injunction, the approximately 2000 certificates issued by the commissioner for use statewide could be "misused" to "saturate" East Hartford.

The commissioner's first claim is that the trial court improperly concluded that the plaintiff was not required to exhaust administrative remedies. The commissioner argues that the plaintiff, prior to filing this action in the Superior Court, was required to seek a declaratory ruling from the commissioner pursuant to General Statutes § 4-176 (a),[4] and that the trial court's ruling to the contrary was incorrect. The plaintiff contends that the trial court, in ruling on the commissioner's motion to

---

[3] The commissioner has not challenged the trial court's ruling on his claim that the plaintiff lacked standing.

[4] General Statutes § 4-176 (a) provides: "Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

dismiss, correctly concluded that: (1) § 4-176 (a) was inapplicable because the plaintiff's complaint sought injunctive relief; (2) the commissioner had not established a procedure whereby the plaintiff could contest the agency action alleged in the complaint; and (3) the commissioner's June 13, 1989 letter to the president of the Connecticut chapter of the national association of housing and redevelopment officials constituted the commissioner's decision on the matter and, therefore, further administrative review would have been futile.

" 'It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter.' " *LaCroix* v. *Board of Education,* 199 Conn. 70, 83–84, 505 A.2d 1233 (1986). Furthermore, "[b]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff['s] claim." *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556, 529 A.2d 666 (1987). " ' "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings." ' . . ." (Citations omitted.) Id., 557.

"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." Id. "The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." (Internal quotation marks omitted.) Id. Moreover, resolution of the issues at the administrative level may render judicial review unnecessary. As the United States Supreme Court has noted: " 'A complaining party may be successful in vindicating his rights in the administrative

process. If he is required to pursue his administrative remedies, the courts may never have to intervene.' *McKart* v. *United States*, 395 U.S. 185, 195, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)." *Pet* v. *Department of Health Services*, 207 Conn. 346, 351–52, 542 A.2d 672 (1988).

The plaintiff first claims that it was not required to exhaust administrative remedies pursuant to § 4-176 (a) because that section does not apply to actions seeking injunctive relief. Section 4-176 (a) provides that "[a]ny person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency." General Statutes § 4-175 (a) in turn sets forth the circumstances under which a party aggrieved by a provision of the general statutes, a regulation or a final decision of an agency may directly seek a declaratory judgment in the Superior Court.[5] The plaintiff seeks to avoid the broad language of these statutes.[6] We conclude that the inclu-

---

[5] General Statutes § 4-175 (a) provides: "If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency (1) does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176, within sixty days of the filing of a petition for a declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the superior court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. The agency shall be made a party to the action."

[6] The dissent argues that the legislature's use of the word "may" in General Statutes § 4-176 (a) indicates that the plaintiff was not statutorily *required* to seek a declaratory ruling from the commissioner before bringing this action in the Superior Court. In *Beck* v. *Board of Trustees*, 32 Conn.

sion in the plaintiff's complaint of a claim for injunctive relief did not excuse the plaintiff from having to exhaust administrative remedies in this case.

In *Pet* v. *Department of Health Services,* supra, we considered the claims of the plaintiff psychiatrist, who was the subject of a disciplinary action brought by the defendant department of health services before the defendant state medical examining board. The plaintiff brought an action in the Superior Court for interlocutory injunctive relief. The trial court concluded that the plaintiff had no adequate remedy at law and, therefore, granted certain of the relief requested. On appeal, we concluded that the plaintiff had not proven the futility of recourse to the available administrative remedy

Sup. 153, 344 A.2d 273 (1975), the plaintiffs, faculty members of certain state colleges and collegial institutions, sought a temporary injunction prohibiting the defendants, the board of trustees and its individual members, from adopting certain proposed employment procedures and personnel policies on the basis that they were invalid under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. The trial court denied the plaintiffs' application because they had not sought a declaratory ruling pursuant to § 4-176 (a) and, thus, had failed to exhaust administrative remedies. The court in *Beck* stated: "In the first instance, a petition requesting a declaratory ruling respecting the applicability of a particular regulation is to be made to the agency itself. . . . The agency has discretionary authority to issue such rulings. Rulings disposing of the petition are given the same status as agency decisions or orders in contested cases and are therefore subject to judicial review by petition to the [Superior Court]. . . . Failure of the agency to exercise its discretionary authority to issue a declaratory ruling permits the petitioner to institute an action in the [Superior Court] for a declaratory judgment respecting the validity or applicability of the regulation in question. . . . *The UAPA thus provides a comprehensive, potentially inexpensive, and completely adequate method of resolving the issues raised in the present application.* " (Emphasis added.) Id., 155. The trial court's conclusion in *Beck* that the procedures set forth in § 4-176 (a) must be exhausted before an action challenging the applicability of a regulation may be brought in the Superior Court applies with equal force to the plaintiff's challenge in the present case to the commissioner's statutory authority to place section 8 eligible tenants in East Hartford. See *Savage* v. *Aronson,* 214 Conn. 256, 269, 571 A.2d 696 (1990) (petitioners could have challenged *statutory* basis for regulation limiting emergency housing to 100 days by seeking declaratory ruling under § 4-176).

and that, therefore, the trial court had improperly intervened in the administrative process. Id., 367–68.

We affirm the principle adhered to in *Pet,* that a claim for injunctive relief does not negate the requirement that the complaining party exhaust administrative remedies.[7] See *Concerned Citizens of Sterling* v. *Sterling,* supra (plaintiffs' bringing of action to enjoin defendant town from selling certain property prior to filing complaint with state elections enforcement commission constituted a failure to exhaust administrative remedies despite commission's lack of statutory authority to seek injunctive relief directly). " '[W]hen a party has a statutory right of appeal from a decision of the administrative agency, he may not, instead of appealing, bring an independent action to test the very issues which the [administrative] appeal was designed to

---

[7] The dissent asserts that the majority's reliance on *Pet* v. *Department of Health Services,* 207 Conn. 346, 542 A.2d 672 (1988), is inapposite, on the basis that, pursuant to General Statutes § 4-183, the plaintiff in that case could have sought review of an adverse preliminary ruling under certain circumstances as well as a stay of a final agency decision pending appeal. The dissent contends that in the present case, there are no adequate administrative remedies available to the plaintiff and, therefore, this court should address the merits in accordance with the reasoning in *Savage* v. *Aronson,* 214 Conn. 256, 268–70, 571 A.2d 696 (1990). While General Statutes § 4-176 does not itself provide for a stay pending appeal, an agency ruling issued pursuant to that section is subject to the appeal provisions of § 4-183; General Statutes § 4-176 (h); including the right to review of a preliminary ruling under specified circumstances and the right to seek a stay. In contending that the present case should follow *Savage* v. *Aronson,* supra, the dissent overlooks the fact that this court's conclusion in *Savage* turned in substantial part on the fact that the plaintiffs had raised *constitutional* claims regarding the challenged regulation, the adjudication of which is exclusively a judicial function. In addition, the plaintiffs' emergency housing benefits were subject to termination immediately pursuant to the challenged regulation and, thus, "such relief as might be afforded by the administrative process would come too late to protect their interests, if the plaintiffs should ultimately prevail." Id., 270. In the present case, the plaintiff has challenged only the commissioner's *statutory* authority to place section 8 eligible tenants within East Hartford, and, therefore, § 4-176 (a) is an appropriate administrative remedy. Id., 270–71.

test.' " *Pet* v. *Department of Health Services,* supra, 352. "[W]e have never held that the mere possibility that an administrative agency may deny a party the specific relief requested is a ground for an exception to the exhaustion requirement." *Concerned Citizens of Sterling* v. *Sterling,* supra, 559.

Thus, in the present case, the plaintiff cannot avoid the operation of § 4-176 (a) by the mere inclusion in its complaint of a claim for injunctive relief. "Even a claim that an administrative agency has exceeded its statutory authority or jurisdiction may be the subject of an administrative appeal." *Payne* v. *Fairfield Hills Hospital,* 215 Conn. 675, 679, 578 A.2d 1025 (1990). We have stated, moreover, that "[i]n the event that a declaratory judgment action should decide that certain acts of state officials violated the constitution, we presume that the officials would accede to that decision." *Sentner* v. *Board of Trustees,* 184 Conn. 339, 344, 439 A.2d 1033 (1981). The same reasoning is applicable here, where the acts complained of allegedly exceeded the commissioner's statutory authority. "Simultaneous or subsequent injunctive relief would therefore be redundant; *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 41, 61 A.2d 89 (1948); because declaratory relief controls state activity no less completely than injunctive relief." Id. We therefore reject the plaintiff's claim that its request for injunctive relief obviated the requirement that it exhaust the available administrative remedies before filing an action in the Superior Court.

The plaintiff next claims that the commissioner had not established a procedure whereby the plaintiff could contest the agency action alleged in the complaint. We find this claim to be without merit.

Pursuant to § 4-176 (a), any person may petition an agency for a declaratory ruling as to, inter alia, the applicability to specified circumstances of a provision of the general statutes or a final decision on a matter within the jurisdiction of the agency. Section 4-176 (b) provides that each agency shall adopt regulations with respect to the procedure for obtaining such a declaratory ruling.[8] In accordance with § 4-176 (b), §§ 8-203-1 through 8-203-5 of the Regulations of Connecticut State Agencies establish procedures for the administrative review of an action or decision of the commissioner of housing. Section 8-203-2 defines "commissioner" as the "commissioner of community affairs." General Statutes § 8-206a (g),[9] however, transferred all powers and duties formerly assigned to the commissioner of community affairs under chapters 128, 129 and 130 of the General Statutes to the commissioner of economic development, in accordance with the provisions of General Statutes § 4-38d.[10] These powers were subse-

---

[8] General Statutes § 4-176 (b) provides: "Each agency shall adopt regulations, in accordance with the provisions of this chapter, that provide for (1) the form and content of petitions for declaratory rulings, (2) the filing procedure for such petitions and (3) the procedural rights of persons with respect to the petitions."

[9] General Statutes § 8-206a (g) provides: "In accordance with the provisions of section 4-38d, all powers and duties transferred to the commissioner of community affairs by subsections (a), (b) and (d) to (f), inclusive, of this section are transferred to the commissioner of economic development. All powers and duties transferred to the commissioner of community affairs by subsection (c) of this section are transferred to the commissioner of human resources."

[10] General Statutes § 4-38d provides in relevant part: "TRANSFER OR ASSIGNMENT OF FUNCTIONS, POWERS, DUTIES OF DEPARTMENT, INSTITUTION, OR AGENCY TO SUCCESSOR DEPARTMENT, INSTITUTION, AGENCY OR AUTHORITY. (a) CONTINUITY OF AUTHORITY. A department, institution, agency or authority to which functions, powers or duties are assigned or transferred under the provisions of any act of the general assembly shall constitute a successor as to such matters and not a grant of new authority.

"(b) CONTINUANCE OF ORDERS AND REGULATIONS. Any order or regulation of a department, institution or agency, or of a division thereof, the functions, powers or duties of which are so assigned or transferred, which

quently vested in the commissioner of housing pursuant to General Statutes § 8-206a (h).[11] The corresponding regulatory powers were thereby transferred in accordance with § 4-38d (b). See footnote 9, supra. Under § 8-203-5 (e) of the regulations, an aggrieved party may petition the commissioner to issue a declaratory ruling on "the validity or applicability of any statutory provision, regulation or order of the department, if the statutory provision or regulation or order, or the threatened application thereof, interferes with or impairs, or threatens to interfere [with] or impair, the legal rights or privileges of [the] complaining party."[12] Section

is in force at the time of such assignment or transfer, shall continue in force and effect as an order or regulation of the department, institution, agency or authority to which such assignment or transfer is made until amended, repealed or superseded pursuant to law."

[11] General Statutes § 8-206a (h) provides: "In accordance with the provisions of section 4-38d, all powers and duties transferred to the commissioner of economic development by subsection (g) of this section are transferred to the commissioner of housing."

Although No. 86-281 of the 1986 Public Acts transferred certain powers of the commissioner under chapters 128 and 129 to the Connecticut housing authority, this transfer could not have divested the commissioner of his authority, pursuant to General Statutes § 4-176 (a), to issue declaratory rulings on matters within his jurisdiction.

[12] Section 8-203-5 (e) of the Regulations of Connecticut State Agencies provides:

"Declaratory ruling. 1. The commissioner may render a declaratory ruling on the validity or applicability of any statutory provision, regulation or order of the department, if the statutory provision or regulation or order, or the threatened application thereof, interferes with or impairs, or threatens to interfere or impair, the legal rights or privileges of a complaining party.

"2. Conditions: The commissioner will not render a declaratory ruling upon the complaint of any person: a. unless that person has a legal interest, by reason of danger or loss or uncertainty, under a statutory provision, regulation or order of the department; b. unless there is an actual bona fide and substantial question or issue in dispute, or substantial uncertainty of legal relations which requires settlement between the parties; c. unless all persons having an interest in the subject matter are parties to the request, or have been given reasonable notice thereof; d. where the commissioner shall be of the opinion that the parties should be left to seek redress by some other form of procedure.

8-203-5 (f) of the regulations in turn provides that an aggrieved party may petition for judicial review of a

"3. A person may petition the department to pass on the validity or applicability of any statutory provision or regulation or order of the department which interferes with or impairs, or threatens to interfere with or impair his legal rights or privileges at any time during which the order or regulation is in effect, or threatens to come into effect.

"4. The petition for a declaratory ruling shall be in the form of a pleading required in civil trials and shall include at least the following: a. the statutory provision or regulations or orders of the department which are involved. b. facts sufficient to show that the question is not moot, or hypothetical and that the petitioner is a proper party to raise the issue. c. facts necessary for the determination of the question; d. a clear and concise statement of the matters involved; e. a statement of all persons having an interest in the subject matter of the complaint, and a sworn statement that such persons have been given notice of the petition by registered or certified mail, return receipt requested.

"5. Within thirty calendar days after the receipt of a petition for a declaratory ruling, the commissioner shall either grant or deny the request a. if the commissioner denies the request, he shall state so in writing to the interested parties along with his reasons for the denial. b. if the commissioner grants the request and if no parties, with an interest in the matter, request an oral hearing thereon, the commissioner may decide the matter on the basis of the written statements of the parties. In this case, the commissioner shall set a date for receipt of written statements from the parties, such date shall not be more than thirty (30) calendar days from the day after the commissioner grants the request. c. If the commissioner grants the request and if any of the interested parties request an oral hearing within two weeks of the granting of the request, the commissioner shall set a date for a hearing of the matter, such hearing is to be held within thirty (30) days of the granting of the request. The commissioner shall issue a written notice of the hearing to all interested parties at least twenty (20) calendar days prior to such hearing.

"6. The commissioner shall issue his decision on any petition for a declaratory ruling within thirty (30) days of the receipt of the written statements of interested parties, or within thirty (30) days after the oral hearing on the matter. However, the commissioner may extend the date of his decision for good cause. The commissioner shall notify, either personally or in writing, all parties of record of his decision or order on a petition for a declaratory ruling. A copy of the decision or order shall be supplied to each party upon written request.

"7. Conduct of Hearings on a Request for a Declaratory Ruling: a. All parties shall be afforded an opportunity to present evidence and argument. b. A record shall be made of all hearings for a declaratory ruling. This record shall include: 1. All petitions, motions and intermediary rulings. 2. Evi-

declaratory ruling or other final decision of the commissioner after having "exhausted administrative remedies available with the department . . . ."[13] Accordingly, we reject this claim of the plaintiff.

The plaintiff next claims that the commissioner effectively decided the plaintiff's claim in a June 13, 1989

---

dence received or considered. 3. Matters officially noticed. 4. Questions and offers of proof, objections and rulings thereon. 5. Proposed findings and exceptions. 6. Decision, ruling or report of the Commissioner. c. Oral hearings shall be conducted in accordance with the rules of evidence as applied to non-jury civil cases. 1. When necessary to ascertain facts not reasonably susceptible of proof under the rules of evidence for non-jury civil cases, evidence may be admitted at the discretion of the commissioner. 2. The rules of legal privilege shall be in effect. 3. Where not prejudicial to a party, any part of the evidence may be in written form. 4. Documentary evidence may be received in form of copies or excerpts. 5. A party may conduct cross-examination. 6. The commissioner may take administrative notice of technical and scientific facts within the department's specialized knowledge. d. The decision or order of the commissioner shall be in writing or stated in the record and shall include findings of fact and the reasons for his decision. e. Community Affairs personnel assigned to a case shall not communicate with any party in connection with the petition except upon notice to all parties involved."

[13] Section 8-203-5 (f) of the Regulations of Connecticut State Agencies provides:

"Judicial review of administrative hearing:

"A person who has exhausted administrative remedies available with the department, and who is aggrieved by a final decision of the commissioner is entitled to judicial review of the decision.

"Proceedings for judicial review shall be instituted by filing a petition for review in the County wherein the aggrieved person resides, within thirty (30) days after mailing of notice of final decision. Copies of the petition must be served upon the commissioner and upon all parties of record.

"Filing of the petition is not an automatic stay of execution of the department's decision.

"Within thirty (30) days after the service of the petition, unless further time is granted by the review court, the department shall transmit to the reviewing court a certified copy of the entire record of the proceeding. The parties may, however, stipulate to a shortened record. The record may contain only such information as the parties may deem necessary, or as may be requested."

letter to Samuel Kasparian, president of the Connecticut chapter of the national association of housing and redevelopment officials (CONN-NAHRO), and, therefore, further agency review would have been futile. The plaintiff is a member of CONN-NAHRO. The commissioner's letter was written in response to a letter from Kasparian requesting a meeting with the commissioner to address CONN-NAHRO's concerns about the commissioner's plan to engage a private contractor to administer the state's section 8 program. While Kasparian did not specifically mention East Hartford, his letter raised issues similar to those raised by the plaintiff in this appeal, including the commissioner's authority to operate a section 8 program in towns where a local public housing authority runs such a program. The plaintiff points to the following language in the commissioner's letter to Kasparian: "Based upon the review of the request, the recommendations of the select committee and evaluation of the impact of the request upon the Department's Section 8 Program, please be informed that we will not limit, when we make the selection, the contractor's area of operation."[14] The

---

[14] The text of the letter read as follows:

"June 13, 1989

Mr. Samuel Kasparian
President
Conn NAHRO
P.O. Box 918
Bristol, CT 06010

Dear Mr. Kasparian:

Re: Section 8 Program

This is in response to your letter of May 4, 1989, and the meeting of the liaison committee on May 18, 1989. As you recall, the purpose of the meeting and letter was the same—for Conn NAHRO to express its concerns regarding the activities of a contractor selected in response to the [Request for Proposal].

Conn NAHRO requested that the contractor be instructed not to lease any additional units in the present areas of operation of the 48 housing authorities who have an [Annual Contribution Contract] with HUD. I informed

plaintiff argues that this passage demonstrates that "all administrative remedies ha[d] been exhausted and it would have been futile for the Plaintiff in its individual capacity to petition the Defendant further on these issues even if the Defendant had appropriate procedures in place for the same." We disagree.

In *LaCroix* v. *Board of Education,* supra, we rejected a similar argument. In that case, a tenured teacher challenged, on due process and breach of contract grounds, the termination of his contract of employment by the defendant board of education. A hearing was scheduled after a termination approval vote by the board. The plaintiff did not attend the hearing nor did he request a subsequent hearing, as he was entitled to do.

you that I would communicate the Chapter's request to the reviewing committee for consideration and recommendation.

Based upon the review of the request, the recommendations of the select committee and evaluation of the impact of the request upon the Department's Section 8 Program, please be informed that we will not limit, when we make the selection, the contractor's area of operation.

To provide support to what we believe is Conn NAHRO's basic intent; namely, not to saturate any particular housing market with subsidized units, we will instruct the contractor not to steer or in any way direct certificate or voucher holders. The contractor will be instructed not to take any action which in any way causes an applicant to locate in any particular area. Further, the contractor will be instructed that if an applicant, through the normal 'finders keepers' process, finds a unit which is located in the present area of operation of one of the 48 housing authorities, to honor and process a request for lease approval.

Thank you for taking the opportunity to share with me your concerns and opinions. I believe you will agree that the course of action set forth above will promote the greatest choice of housing opportunities for the needy, eligible families in the State of Connecticut, as set forth in the Federal Regulations governing the program.

If you have any questions or require additional information, please do not hesitate to contact me.

Sincerely,

/s/John F. Papandrea
Commissioner"

The plaintiff then brought an action in the Superior Court for damages and other relief. The trial court awarded the plaintiff damages but denied him reinstatement. On appeal, the Appellate Court ordered the plaintiff's reinstatement and a new trial to determine additional damages, and we granted certification to review the judgment of the Appellate Court. *LaCroix* v. *Board of Education,* 2 Conn. App. 36, 475 A.2d 1110, cert. granted, 194 Conn. 802, 477 A.2d 1021 (1984). We concluded that the plaintiff had failed to exhaust administrative remedies and, therefore, we reversed the judgment of the Appellate Court. *LaCroix* v. *Board of Education,* supra, 199 Conn. 87.[15] We rejected the plaintiff's argument that resort to administrative remedies was not required because the remedy would have been inadequate or futile. We stated: "[T]he statutory remedies are not rendered futile by the plaintiff's conclusory assertion that requesting and attending a hearing before the defendant board would have been pointless in the face of the board's earlier decision to terminate his employment. . . . Had the plaintiff requested and attended a hearing following the board's . . . letter, he would have been able to raise the issue of lack of impartiality in an administrative appeal. 'By not appearing before the board, the plaintiff not only deprived the defendant board of the opportunity to hear, analyze and review a matter within its responsibility and expertise, but also deprived [him]self of the opportunity to put on [his] case and to make a proper record on which to seek judicial relief in the event

---

[15] We concluded that the board's initial attempt to terminate the plaintiff's contract in June, 1972, and its second termination attempt in October, 1972, should be treated as distinct proceedings. *LaCroix* v. *Board of Education,* 199 Conn. 70, 76, 505 A.2d 1233 (1986). We upheld the trial court's award of damages as to the June termination but reversed the Appellate Court with respect to its ruling ordering the plaintiff's reinstatement and a new trial to determine additional damages for the school years subsequent to 1972–73. Id., 82, 87.

[he] was terminated.' [*Cahill* v. *Board of Education,* 198 Conn. 229, 241–42, 502 A.2d 410 (1985).]" Id., 84–85.

We are persuaded that the reasons for requiring exhaustion of administrative remedies in *Lacroix* are equally applicable in the present case. The fact that the commissioner, in his June 13, 1989 letter to Kasparian, indicated his intention not to restrict the geographic area of the state's section 8 program did not relieve the plaintiff of its obligation to pursue its administrative remedies in an effort to persuade the commissioner that his position was legally incorrect. Other than the June 13, 1989 letter, we find nothing in the record to show that the plaintiff sought an administrative ruling that the commissioner's operation of a section 8 program in East Hartford was improper.[16] We therefore reject the plaintiff's futility claim.

Because the plaintiff failed to exhaust the available administrative remedies, the trial court did not have

---

[16] The commissioner argues that this court may treat Kasparian's letter as a request for a declaratory ruling pursuant to General Statutes § 4-176 (a), and thus treat the commissioner's response as a declaratory ruling from which the plaintiff could have appealed in accordance with General Statutes § 4-183. See General Statutes § 4-176 (h). Section 4-176 (h) provides in pertinent part that a declaratory ruling "shall have the same status and binding effect as an order issued in a contested case and shall be a final decision for purposes of appeal in accordance with the provisions of section 4-183." Pursuant to § 4-183 (c), an appeal from a final decision of an administrative agency must be filed in the Superior Court within forty-five days of the mailing of such decision. The plaintiff brought this action nearly eight months after the mailing of the commissioner's letter to Kasparian. If the commissioner's letter had constituted a declaratory ruling, and thus a final decision pursuant to § 4-183, the plaintiff's failure to appeal within the time prescribed would have been a failure to exhaust administrative remedies and would have deprived the Superior Court of subject matter jurisdiction. *Rogers* v. *Commission on Human Rights & Opportunities,* 195 Conn. 543, 550, 489 A.2d 368 (1985). Because the commissioner's letter did not comply with the requirements set forth in § 4-176 (f) and (h) as to the mailing and contents of a declaratory ruling, however, we are persuaded that it did not constitute a final decision for purposes of appeal pursuant to § 4-183.

subject matter jurisdiction to entertain this action.[17] We conclude, therefore, that the commissioner's motion to dismiss was improperly denied.

The judgment is reversed and the case is remanded with direction to dismiss the plaintiff's complaint.

In this opinion PETERS, C. J., SHEA, CALLAHAN, COVELLO and BORDEN, Js., concurred.

BERDON, J., concurring in part and dissenting in part. I would get to the merits of the claim of the plaintiff, the housing authority of the town of East Hartford, on this important issue involving housing for the poor. That issue is whether poor families, who hold state administered rental assistance certificates and vouchers issued by the defendant, commissioner of the department of housing (commissioner), pursuant to section 8 of the United States Housing Act of 1937, (section 8), 42 U.S.C. § 1437f, have the statutory and constitutional right freely to use the certificates and vouchers for rental living accommodations in any town in this state.[1] The rental certificates and vouchers are part of a federal financial assistance program designed to aid "lower income families in obtaining a decent place to live" and to promote "economically mixed housing." 42 U.S.C. § 1437f (a).

The plaintiff zeroed in on the importance of this case when it expressed its concern that the commissioner

---

[17] Because we conclude that the plaintiff has improperly failed to exhaust administrative remedies, we do not address the propriety of the trial court's granting of injunctive relief against the commissioner. We note, however, that once the plaintiff has pursued the available administrative remedies, injunctive relief may be unnecessary because the trial court's injunction operates only to preclude *future* placement in East Hartford of participants in the state's section 8 program. See *Sentner* v. *Board of Trustees,* 184 Conn. 339, 344, 439 A.2d 1033 (1981) ("declaratory relief controls state activity no less completely than injunctive relief").

[1] Put another way, does the commissioner have the authority to issue such certificates and vouchers to persons for use in any town in the state?

"has approximately 2,000 statewide certificates and/or [rental certificates and] vouchers *that could conceivably be misused to saturate East Hartford.*" (Emphasis added.) If, by that statement, the plaintiff is pleading "NIMBY"—that is, not in my backyard—as a basis of its claim for an injunction, thereby attempting to use the power of the judiciary to prevent the poor from having access to housing in East Hartford, justice necessitates a resolution of the underlying issues *today.* Indeed, at the time of trial, the state had a waiting list of 5000 families eligible for the section 8 program.[2] The majority, however, allows itself to be led down the procedural path of reversing on the dubious claim that we lack jurisdiction to decide the issue because the plaintiff failed to exhaust its administrative remedies. By so doing, the majority avoids a decision on this issue, which is important not only for the poor, but for all of Connecticut.

I

The majority's claim that the plaintiff was required first to seek a declaratory ruling before the commissioner is based upon General Statutes § 4-176, which provides in part that "[a]ny person *may* petition an agency . . . for a declaratory ruling . . . ."[3]

---

[2] A representative of the contractor who administers the program for the commissioner testified that on a statewide basis, there was no shortage of eligible rental units for the program.

[3] General Statutes § 4-176 provides: "(a) Any person *may* petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency.

"(b) Each agency *shall* adopt regulations, in accordance with the provisions of this chapter, that provide for (1) the form and content of petitions for declaratory rulings, (2) the filing procedure for such petitions and (3) the procedural rights of persons with respect to the petitions.

"(c) Within thirty days after receipt of a petition for a declaratory ruling, an agency *shall* give notice of the petition to all persons to whom notice

(Emphasis added.) Nevertheless, it is clear from the plain language of § 4-176 that a party is not statutorily

is required by any provision of law and to all persons who have requested notice of declaratory ruling petitions on the subject matter of the petition.

"(d) If the agency finds that a timely petition to become a party or to intervene has been filed according to the regulations adopted under subsection (b) of this section, the agency: (1) *May* grant a person status as a party if the agency finds that the petition states facts demonstrating that the petitioner's legal rights, duties or privileges shall be specifically affected by the agency proceeding; and (2) *may* grant a person status as an intervenor if the agency finds that the petition states facts demonstrating that the petitioner's participation is in the interests of justice and will not impair the orderly conduct of the proceedings. The agency *may* define an intervenor's participation in the manner set forth in subsection (d) of section 4-177a.

"(e) Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing *shall:* (1) Issue a ruling declaring the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances, (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under section 4-168, on the subject, or (5) decide not to issue a declaratory ruling, stating the reasons for its action.

"(f) A copy of all rulings issued and any actions taken under subsection (e) of this section *shall* be promptly delivered to the petitioner and other parties personally or by United States mail, certified or registered, postage prepaid, return receipt requested.

"(g) If the agency conducts a hearing in a proceeding for a declaratory ruling, the provisions of subsection (b) of section 4-177c, section 4-178 and section 4-179 *shall* apply to the hearing.

"(h) A declaratory ruling *shall* be effective when personally delivered or mailed or on such later date specified by the agency in the ruling, *shall* have the same status and binding effect as an order issued in a contested case and *shall* be a final decision for purposes of appeal in accordance with the provisions of section 4-183. A declaratory ruling *shall* contain the names of all parties to the proceeding, the particular facts on which it is based and the reasons for its conclusion.

"(i) If an agency does not issue a declaratory ruling within one hundred eighty days after the filing of a petition therefor, or within such longer period as may be agreed by the parties, the agency *shall* be deemed to have decided not to issue such ruling.

"(j) The agency *shall* keep a record of the proceeding as provided in section 4-177." (Emphasis added.)

required to travel this administrative route. Section 4-176 (a)'s use of the word "may" makes this administrative remedy optional for the plaintiff.

It is clear that when the words "shall" and "may" are selectively used in a statute, they are words "commonly mandatory and directory in connotation," and, therefore, they "must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings . . . . Thus, the words *shall* and *may* should be interpreted according to their plain and ordinary meaning." (Internal quotations marks omitted.) *Farricielli* v. *Personnel Appeal Board,* 186 Conn. 198, 203, 440 A.2d 286 (1982). Since § 4-176 (a) provides that the plaintiff "may" seek a declaratory ruling and since the statute selectively uses the words "shall" and "may" within its several subsections,[4] the "may" is clearly permissive and the plaintiff was not required to seek a ruling from the commissioner. In the present case, may means may.

Even if there was a mandatory route that provided a remedy, exhaustion is not carved in stone—there are several well recognized exceptions. *Doe* v. *Maher,* 40 Conn. Sup. 394, 402, 515 A.2d 134 (1986). One applicable exception is that exhaustion is not required if the administrative remedy would be futile. *Kosinski* v. *Lawlor,* 177 Conn. 420, 424–25, 418 A.2d 66 (1979); see *Sharkey* v. *Stamford,* 196 Conn. 253, 257, 492 A.2d 171 (1985); *Friedson* v. *Westport,* 181 Conn. 230, 435 A.2d 17 (1980); *Bianco* v. *Darien,* 157 Conn. 548, 554, 254 A.2d 898 (1969).

In this case, the very question that the majority sends back to travel through the administrative route has already been answered by the commissioner. On May 4, 1989, Samuel Kasparian, president of the Connecti-

---

[4] See footnote 3, supra.

cut Chapter of the National Association of Housing and Redevelopment Officials (CONN-NAHRO), of which the plaintiff is a member, wrote to the commissioner raising essentially the same claims the plaintiff raises herein.[5] This letter was followed by a meeting on

---

[5] The text of the letter is as follows:

"May 4, 1989

John F. Papandrea, Commissioner
STATE OF CONNECTICUT
Department of Housing [DOH]
1179 Main Street
Hartford, Connecticut 06103-1089

Dear Commissioner Papandrea:

The Connecticut Chapter of NAHRO would like to formally request that a DOH-CONN-NAHRO liaison meeting be scheduled as soon as possible. The purpose of the meeting would be to discuss an issue that is of extreme concern to the local housing authorities in the State of Connecticut.

CONN-NAHRO members have expressed serious concerns regarding your department's plans to award a contract to a private entity to administer the Section 8 Existing/Housing Voucher program your department now operates throughout the State. The major concerns and issues raised, albeit not totally inclusive, are the following:

(1) local authorities have been operating these programs within their communities for approximately ten (10) to fifteen (15) years. During that time they have fostered good relationships with local landlords, assisted many state residents, and generally, have operated the programs in an efficient and effective manner.

(2) In the mid-1970's when DOH (DCA) [Department of Community Affairs] initially became involved in the administration of the program, we believe that the original intent of the state was to operate exclusively in non-metro areas where no PHA program was operating.

(3) There has been significant confusion and serious perception problems, over the past three years, among both program participants and participating landlords concerning which entity had authority and responsibility for particular units.

(4) During the past year and a half, while DOH was significantly increasing its certificate/voucher issuances and increasing its lease-up rate, the issue of untimely payments to landlords hurt the program's reputation in many communities. The local authorities have the capability to make timely payments.

(5) Local authorities are required to maintain 95% utilization by HUD. If the state, and/or its contractor, were allowed to lease units in a city

May 18, 1989, with the commissioner and a liaison committee of CONN-NAHRO, at which time the same issues were discussed. In answering these claims, which included the question of whether the commissioner had "the legal authority to operate the same program in a city or town in which a housing authority currently operates the same program," the commissioner made it abundantly clear that he would "not limit . . . the . . . area of operation" of the contractor who was to be retained to operate the section 8 program for him.[6] The commissioner emphatically stated that needy persons eligible for the program would not be steered to any particular area. On the contrary, he wrote that if a person who holds a section 8 rental certificate or voucher from his office finds, "through the normal 'finders keepers' process," a living unit in any area, including East Hartford, it would be honored and processed for approval.

---

or town that operated a program, this could seriously jeopardize our local programs.

(6) There may be a question as to whether or not DOH has the legal authority to operate the same program in a city or town in which a local housing authority currently operates the same program.

(7) As a suggestion, some LHAs (Local Housing Authority] have expressed an interest in operating the DOH units, for DOH, on a cooperative basis in certain areas of the state e.g., Torrington and Willimantic. Perhaps some consideration could be given to this idea.

We understand that the decision date for the selection and/or designation of a private contractor is May 25, 1989. We would most certainly expect that our requested liaison meeting be held prior to that date in order for us to express our views on this issue.

We would like to thank you for your attention to this serious matter and await your reply. Thank you also for your continued cooperation and assistance with CONN-NAHRO.

Sincerely,

Samuel Kasparian
President
CONN-NAHRO"

[6] See footnote 14 of the majority opinion for the text of the commissioner's letter.

The commissioner's position that he has the authority to issue section 8 rental certificates and vouchers to applicants for use in any part of the state is underscored by his vigorous defense in this suit. The majority, however, would have the plaintiff return to the administrative level, appear before the commissioner, and argue the very point that the commissioner has already decided. The futility of seeking the commissioner's declaratory ruling is evident.[7]

[7] Furthermore, even if there was a mandated administrative remedy, I disagree with the majority that the plaintiff's claim for equitable relief did not make that remedy inadequate. The majority's reliance on *Pet* v. *Department of Health Services,* 207 Conn. 346, 542 A.2d 672 (1988), is inapposite. In *Pet,* we pointed out that in a disciplinary proceeding before the department of health services, the plaintiff physician had an adequate remedy under General Statutes § 4-183. We further noted that "[n]ot only does that statute provide a right of appeal from a final agency decision by an aggrieved party, but it also includes an immediate right to appeal from an adverse preliminary ruling if review of the final agency decision would not provide an adequate remedy. Moreover, the statutory framework includes a means of staying an agency decision pending appeal. General Statutes § 4-183 (c). Thus, a potentially aggrieved party is well protected by statute." Id., 352. Accordingly, we concluded in *Pet* that the plaintiff had not proven that the administrative remedy was inadequate. Id., 367–68.

In this case, there are no adequate administrative remedies available to the plaintiff. Indeed, the facts of this case bring it within our holding in *Savage* v. *Aaronson,* 214 Conn. 256, 571 A.2d 696 (1990). In *Savage,* the issue was whether the defendant commissioner of income maintenance could be enjoined from reducing the period of eligibility for its emergency housing program to the plaintiffs, recipients of Aid to Families with Dependent Children, from 80 to 100 days following their displacement from their former homes. Just as in this case, the commissioner argued that the trial court lacked jurisdiction because the plaintiffs failed to exhaust their administrative remedies by not first filing a petition for a declaratory ruling from the commissioner pursuant to § 4-176 (a). We concluded in *Savage,* however, that the plaintiffs were not barred from the courthouse as a result of failing to seek a declaratory ruling from the administrative agency. We held "that when [t]he relief sought and the issues raised are distinctly equitable in nature, administrative remedies were not adequate, even though some of the issues involved could have been resolved before an administrative agency. *Bianco* v. *Darien,* 157 Conn. 548, 554, 254 A.2d 898 (1969). In order that another remedy be adequate, it must be equally complete and completely practical. *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 283, 362 A.2d 1354 (1975). We agree with the trial court that the administra-

## II

On the merits of the plaintiff's claim, I believe that the trial court improperly concluded that the commissioner lacks the authority to issue section 8 rental certificates and vouchers to eligible persons for residence in East Hartford. The trial court found that this function is now vested in the Connecticut Housing Authority (CHA), which could only be exercised, *"provided (1) the local governing body of the municipality shall, by resolution, approve the housing project and (2) if an active local housing authority exists in the municipality, such local housing shall, by resolution, approve the housing project."* (Emphasis added.) General Statutes § 8-120. In effect, the trial court construed the section 8 rental certificate and voucher program to be a "housing project," which would require a vote by the local governing body or the plaintiff. Because neither the legislative body nor the plaintiff has given its permission, the plaintiff argues that families cannot utilize their rental assistance rental certificates and vouchers to rent apartments from private landlords in East Hartford.

In making this argument, the plaintiff, however, ignores General Statutes § 8-206 (d) which provides in relevant part: "The commissioner of housing is authorized to do all things necessary to apply for, qualify for and accept any federal funds made available or allocated under any federal act for any activities which may be pertinent to the purposes of [chapter 133] and chapters 128, 129, 130, 135, and 136 and said commissioner

---

tive route would not have provided the plaintiffs with a sufficiently expeditious remedy by which to resolve all the issues raised in challenging the regulation in time to afford the plaintiffs effective relief. The motion to dismiss on the ground of failure to exhaust administrative remedies was, therefore, properly denied." (Internal quotation marks omitted.) Id., 270. This case warrants the same treatment.

shall administer any such funds allocated to the department in accordance with federal law." The statutory chapters listed in § 8-206 have reference to providing decent, safe and sanitary housing for all the residents of our state. Accordingly, the commissioner does have the authority to issue section 8 rental certificates and vouchers for housing through the state. Also, even if "housing project" were to be construed to include the section 8 program, the restriction referred to in General Statutes § 8-121 (a), which provides for approval by the local legislature and housing authority, is applicable only to the CHA and not the commissioner of housing.

Likewise, under federal law, the commissioner has authority to issue section 8 rental certificates and vouchers within the state without limitation. A public housing agency is defined in 42 U.S.C. § 1437a (b) (6) as "any State, county, municipality or other governmental entity or public body . . . which is authorized to engage in or assist in the development or operation of low-income housing." According to 42 U.S.C. § 1437a (b) (1), " 'lower income housing' means decent, safe and sanitary dwellings assisted under [chapter eight of title 42]." It is stated throughout chapter eight that the Department of Housing and Urban Development (HUD) may enter into a contract with a "public housing agency," which, in turn, may use HUD's financial assistance to aid in the development of decent, safe and sanitary dwellings. It is clear that the commissioner of housing meets the federal definition of a "public housing authority"[8] and is authorized to issue section 8 rental certificates and vouchers within the state without any limitation.

---

[8] In addition to providing a low-income housing program pursuant to General Statutes § 8-119b et seq., there are many programs that bring the department of housing within the meaning of a public housing agency. For example, General Statutes § 8-44a (state, acting through the commissioner may provide financial assistance for housing projects); General Statutes § 8-45 (commissioner provides oversight concerning low rental housing projects).

Moreover, any restriction on where families, who are issued section 8 rental certificates and vouchers by the commissioner, may use their subsidies would conflict with state and federal fair housing laws. General Statutes § 46a-64b et seq. prohibits discrimination on the basis of the tenant's "lawful source of income." A lawful source of income is defined to include "income derived from . . . housing assistance." General Statutes § 46a-63. Pursuant to the federal Fair Housing Act, 42 U.S.C. § 3608, all the parties in the present appeal have an affirmative duty to promote fair housing in the administration of the section 8 program. The trial court's ruling is contrary to this duty. Finally, through the Cranston-Gonzalez National Affordable Housing Act, codified in 42 U.S.C. § 1437f (r), Congress declared that section 8 rental certificates and vouchers are portable within the same state.[9]

It is clear to me that portability must be the password for the section 8 rental certificates and vouchers issued by the commissioner. No person should be restricted in the right to obtain decent housing in any town, whether it be in towns as far west as Greenwich or as far east as Stonington. A person cannot be restricted from obtaining housing in any of our 169 towns merely because he or she is being aided by the federal government through a section 8 rental assistance certificate or voucher program administered by the commissioner. Our federal constitution guarantees the right to intrastate travel. *King* v. *New Rochelle*, 442 F.2d 646, 648 (2d Cir.), cert. denied, 404 U.S. 863, 92

---

[9] The Cranston-Gonzalez National Affordable Housing Act, codified in 42 U.S.C. § 1437f (r), reads in part: "Any family assisted under subsection (b) or (o) of this section may receive such assistance to rent an eligible dwelling unit if the dwelling unit to which the family moves is within the same, or a contiguous, metropolitan statistical area as the metropolitan statistical area within which is located the area of jurisdiction of the public housing agency approving such assistance."

S. Ct. 113, 30 L. Ed. 2d 107 (1971). In *King,* the Second Circuit Court of Appeals struck down a five-year residency requirement for public housing. Finding "our thinking to be substantially in accord with" the appeals court in *King,* this court quoted with approval the following: " '[I]t would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state.' Id., 648." *Bruno* v. *Civil Service Commission,* 192 Conn. 335, 346–47, 472 A.2d 328 (1984). Any restriction preventing a section 8 tenant from living in East Hartford or any other town would impinge on that right.

I agree with the position of the amici curiae—the Connecticut Civil Liberties Union Foundation, Connecticut State Conference of the NAACP, Connecticut Housing Coalition, Hartford Neighborhood Housing Coalition, Fair Housing Association of Connecticut, Connecticut Legal Services, Legal Aid Society of Hartford County, Inc., New Haven Legal Assistance Association, Inc., and Neighborhood Legal Services—when they reasoned as follows: "The concept of a municipal 'veto' to prevent a section 8 tenant's entry into a town is offensive to the constitution. . . . [If such a construction is not avoided] the plaintiff or any other municipality could refuse entry to an entire class of low-income families, or insist that they take a place on the local housing authority waiting list. One town after another could close their doors to the over 2,000 low income families receiving Section 8 rental certificates and vouchers administered by the state." The result of the majority's decision today—that is, merely reversing on the grounds that the plaintiff should have sought a declaratory ruling from the commissioner—leaves the commissioner of housing to grapple with an unresolved claim that is squarely before us, fully briefed and argued before a full court.

Accordingly, I would reverse the trial court, not on jurisdictional grounds, but because the commissioner has the authority to issue section 8 rental certificates and vouchers to any eligible citizen for housing that can be used in any of the 169 towns of this state.