[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
Facts
The plaintiffs, Alfred Maderia, Jr. and Timothy Madeiros, filed an action against the defendants, Northeast Utilities Service Company and Northeast Nuclear Energy Company (collectively "NU"), in May of 2000, seeking injunctive relief and monetary damages for injuries alleged to have been sustained as the result of the operation of the Millstone nuclear power units located in Waterford, Connecticut. On October 29, 2001, upon motion granted by the court, the plaintiffs amended their complaint to add an additional party defendant, Dominion Nuclear Connecticut, Inc. ("Dominion Nuclear").
The following facts are either undisputed or uncontradicted.[1] The Connecticut Department of Environmental Protection ("DEP") issued a five-year permit, National Pollution Discharge Elimination System Permit ("NPDES permit"), to the defendant Northeast Nuclear Energy Company on December 14, 1992.[2] That permit governs the operations of the Millstone Station and authorizes the use of a once-through cooling system. On June 13, 1997, prior to the expiration date of the NPDES permit, Northeast Nuclear Energy Company filed a request for permit renewal. The 1992 permit remains in effect until the renewal application process is completed. The DEP has not completed its action with respect to the application for renewal, but has issued an Emergency Authorization ("EA") in connection with ongoing operations at Millstone Station.
NU contracted to sell the Millstone Station to Dominion Nuclear. On January 31, 2001, Dominion Nuclear applied to the DEP for the transfer of all Millstone environmental permits and registrations, including the NPDES permit and EA, to itself The application was approved by DEP on March 29, 2001; title to Millstone Station was transferred to Dominion Nuclear on March 31, 2001.
The plaintiffs, both commercial fishermen, filed a two-count amended complaint claiming the defendants' operations at Millstone "constitute a common-law nuisance" and that they have "intentionally interfered with the plaintiffs' ability to earn their livelihood as fishermen in the Stonington area." In their claims for relief, the plaintiffs seek monetary damages, a permanent injunction prohibiting operations at Millstone Station during the winter flounder spawning season and the CT Page 2574 conversion of the Millstone Station to a closed cooling system or, in the alternative, a permanent shutdown of the operations. By motion dated December 20, 2001, Dominion Nuclear moves to dismiss the requests for injunctive relief and conversion or closure of the Millstone Station on the ground that plaintiffs failed to exhaust available administrative remedies.[3]
Discussion
"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . ." (Internal quotation marks omitted.) Doe v. Roe,246 Conn. 652, 661, 717 A.2d 706 (1998). "In ruling upon whether a complaint survives a motion to dismiss a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citations omitted; internal quotation marks omitted.) Barde v. Board of Trustees,207 Conn. 59, 62, 539 A.2d 1000 (1988).
The plaintiffs first challenge the defendant's use of a motion to dismiss, rather than a motion to strike, certain claims for relief The court finds, however, that a failure to exhaust administrative remedies is a jurisdictional defect. "Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum." Drumm v. Brown, 245 Conn. 657, 676,716 A.2d 50 (1998). "If [a] trial court [has] no jurisdiction because the plaintiffs . . . failed to exhaust their administrative remedies, the action must be dismissed." Concerned Citizens of Sterling v. Sterling,204 Conn. 551, 557, 529 A.2d 666 (1987). Claims for relief are also subject to dismissal.
The conclusion we have reached that the plaintiffs have failed to exhaust their administrative remedy would ordinarily require that the complaint be dismissed with respect to claims for any relief available in the administrative appeal. Accordingly all of the prayers for injunctive relief, which CT Page 2575 pertain generally to the continued operation of the landfill, would have had to be dismissed, leaving only the claims for damages, attorney's fees and costs.
Laurel Park, Inc. v. Pac, 194 Conn. 677, 689, 485 A.2d 1272 (1984).
Having determined that the issue is properly before this court procedurally, the court next addresses the merits of the claim that plaintiffs failed to exhaust administrative remedies available to them. The case of Fish Unlimited v. Northeast Utilities Service Co., 254 Conn. 1,756 A.2d 262 (2000) ("Fish I"), is directly on point with respect to this issue. In Fish I, the plaintiffs sought to enjoin the restart of unit 2 at the Millstone Station, then owned and operated by Northeast Utilities Service Company. The defendants moved to dismiss the action on the ground that the plaintiffs failed to exhaust their administrative remedies, which motion was denied by the trial court. Our Supreme Court vacated the judgment and remanded the case to the trial court with direction to render judgment dismissing the action.
The NPDES permit at issue in Fish I is the same 1992 permit involved in this case. The Supreme Court noted that the defendants had timely filed their renewal application and that Fish Unlimited intervened in that proceeding before the DEP. While the application was pending, the plaintiffs in Fish I brought their action in superior court alleging that the once-through condenser cooler water system caused "unreasonable pollution" to the waters of the state of Connecticut and contributed significantly to the decline of the winter flounder stock in Niantic River and Niantic Bay. In addition to the request to enjoin the restart of unit 2, the plaintiffs requested the trial court to enter an order requiring the conversion of the current cooling system to a closed cooling system.
The Supreme Court concluded that the plaintiffs failed to exhaust their administrative remedies and that those remedies were neither futile nor inadequate. Although these plaintiffs are not the same plaintiffs as inFish I, they are advancing identical arguments. This court is bound by the reasoning and holding in Fish I:
`The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions.' (Internal quotation marks omitted.) Housing Authority v. Papandrea, supra, 222 Conn. 420; Concerned Citizens of Sterling v. Sterling, supra, 204 Conn. 557. `The doctrine of exhaustion furthers CT Page 2576 the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review.' (Internal quotation marks omitted.) Housing Authority v. Papandrea, supra, 420; Concerned Citizens of Sterling v. Sterling, supra, 556. In addition, the administrative agency may be able to resolve the issues, making judicial review unnecessary. As the United States Supreme Court has stated, [a] complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).' (Internal quotation marks omitted.) Housing Authority v. Papandrea, supra, 420-21; Pet v. Dept. of Health Services, 207 Conn. 346, 351-52, 542 A.2d 672 (1988).
Id., 12-13.
 The plaintiffs recognize the exhaustion doctrine, but assert that they are excused from compliance because the injunctive relief they seek was not available through the administrative process. Specifically, they contend that the permit renewal proceeding was inadequate because: (1) it would not redress the environmental problems associated with the use of a once-through cooling system; and (2) it is unlikely that the department will conduct a hearing on the matter in the foreseeable future, thus causing further harm to the winter flounder population and the waters of Long Island Sound. Although we agree that a party is not required to exhaust an administrative remedy when that remedy necessarily will be futile, we disagree with the plaintiffs' characterization of their administrative remedy in this case.
 An administrative remedy is futile or inadequate if the agency is without authority to grant the relief requested. Cannata v. Dept. of Environmental Protection, supra, 215 Conn. 625. The department in this case, however, had the authority to grant the plaintiffs' requested relief during the permit renewal proceeding in which Fish Unlimited had intervened.
CT Page 2577 Id., 14.
 The plaintiffs also contend that the permit renewal proceeding is inadequate because it is unlikely that the department will conduct a hearing on the matter in the foreseeable future, thus causing more harm to the winter flounder population and the waters of Long Island Sound. In support of this allegation, the plaintiffs note that although the defendants' permit expired two years ago, the department has not yet begun hearings addressing their renewal application. We repeatedly have held, however, that `[d]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore.' (Internal quotation marks omitted.) Polymer Resources, Ltd. v. Keeney, supra, 227 Conn. 563; Pet v. Dept. of Health Services, supra, 207 Conn. 354. In the present case, the plaintiffs could have obtained relief through an alternative statutory procedure, namely, past permit renewals. Millstone has been the subject of department reviews, approvals, and permits for more than twenty-five years. The plaintiffs, however, have failed to intervene in any of these proceedings, many of which addressed the very issues that they claim justify the trial court's intervention. The plaintiffs cannot now benefit from this deliberate decision to wait until the eleventh hour, claim futility or inadequacy, and then request that the trial court step in and issue relief that is properly within the authority and expertise of the department.
Id., 17-18.
 Conclusion
As in Fish I, this court concludes that the plaintiffs have failed to exhaust adequate administrative remedies available to them. Having failed to do so, this court lacks subject matter jurisdiction with respect to plaintiffs' claims for injunctive relief and conversion of Millstone Station to a closed cooling system. Accordingly, the court grants Dominion Nuclear's motion to dismiss 1 and 2 of plaintiffs' claims for relief CT Page 2578
BY THE COURT
 ___________________ McLachlan, J.