# ALLEN J. LABBE ET AL. *v.* PENSION COMMISSION OF THE CITY OF HARTFORD ET AL.
## (14696)

PETERS, C. J., BORDEN, BERDON, NORCOTT and FOTI, Js.

Argued December 2, 1993—decision released June 28, 1994

*Leon M. Rosenblatt,* for the appellants-appellees (plaintiffs).

*H. Maria Cone,* then deputy corporation counsel, with whom was *Karen K. Buffkin,* special counsel, for the appellees-appellants (defendants).

BORDEN, J. The dispositive issue in this appeal is whether the plaintiff Alan Labbe[1] was excused from exhausting the grievance procedures under a collective bargaining agreement before commencing an action in the Superior Court because using the procedures would have been futile. The plaintiff appealed to the Appellate Court from the judgment of the trial court dismissing his claim for lack of subject matter jurisdiction because he had failed to exhaust his contractual remedies. The defendants, the Hartford pension commission and the city of Hartford, cross appealed. We transferred the case to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The plaintiff claims that he was excused from using the grievance procedures established in the collective bargaining agreement because: (1) the procedures were only available to employees, and the plaintiff was no longer an employee when the grievance arose; (2) the procedures applied only to disputes between the parties to the agreement, and the parties to the agreement did not dispute the issue raised by the plaintiff; (3) using the procedures would have been futile; and (4) General Statutes § 31-51bb permits this action without prior recourse to the grievance procedures. In their cross

---

[1] John Murdock is also a plaintiff in this case. Murdock was an active duty police officer when this action was commenced, and he became eligible for normal retirement on January 8, 1993. Because his retirement date is no longer affected by the issues underlying this case, his appeal is now moot. Accordingly, we focus on the appeal of Labbe, and we refer to him as the plaintiff.

appeal, the defendants claim that res judicata bars the plaintiff's claim in this case.[2] Because we agree with the plaintiff's third claim, namely, that using the grievance procedures in this case would have been futile, we need not address his other claims.

The plaintiff commenced this action in March, 1991.[3] The defendants moved to dismiss, claiming that the plaintiff's failure to exhaust his contractual and administrative remedies deprived the court of subject matter jurisdiction. After taking evidence for two days on both the motion and the merits of the case, the trial court, *Hon. Robert J. Hale,* state trial referee, issued a decision from the bench granting the defendants' motion to dismiss.

The record reveals the following facts. The plaintiff is a retired Hartford police officer and a Vietnam era veteran of the United States armed forces. In 1987,

[2] The defendants also claim that: (1) the plaintiff lacks standing to pursue an action based on the breach of the collective bargaining agreement; (2) the defendants' actions did not violate the plaintiff's right to equal protection of the law; and (3) the trial court improperly admitted confusing and marginally relevant evidence concerning two other pension plans. The first claim is essentially a restatement of the argument that the plaintiff failed to exhaust his contractual remedies, which we address below. The second claim goes to the merits of the plaintiff's case and is not yet properly before us. Although the third claim is likely to arise in a new trial, we decline to review it because we will be in a better position to assess the pragmatic relevance of the disputed evidence after a full trial. See *Falby* v. *Zarembski,* 221 Conn. 14, 26, 602 A.2d 1 (1992); *Kaiko* v. *Dolinger,* 184 Conn. 509, 512, 440 A.2d 198 (1981). Thus, we do not address these claims.

[3] The plaintiff's complaint alleged that the defendants had: (1) violated article first, § 1 of the constitution of Connecticut by giving public emoluments and privileges to World War II veterans and other city employees, but denying such benefits to Vietnam era veterans; (2) deprived the plaintiff of property and liberty interests without due process of law, in violation of the United States and Connecticut constitutions; (3) denied the plaintiff equal protection of the law, in violation of the United States and Connecticut constitutions; and (4) breached the pension agreement by denying pension benefits that were due, and by not permitting military service time to be applied toward the attainment of benefits.

the collective bargaining agreement negotiated between the Hartford police union (union) and the city of Hartford (city) was amended to allow police officers to purchase the right to apply military service time to the calculation of their pension benefits.[4] The substantive question underlying this appeal is whether, on one hand, the agreement authorized police officers to use military service time to reduce the time period before which they were eligible to receive their pensions, or whether, on the other hand, it authorized only an increase in pension benefits in proportion to the additional years of military service, without affecting when the officers became eligible. In the parlance of the parties, the former practice is known as using the military time "up front," and the latter practice is known as using the military time "in back."

The agreement also provides a four step procedure for the resolution of disputes.[5] The first three steps of

[4] Section 3.6.3 of the collective bargaining agreement provides: "Normal retirement for employees hired before July 1, 1984 shall be after twenty (20) years of continuous service. Employee pension benefits vest after ten (10) years of continuous service."

Section 3.6.4 of the agreement provides: "An employee who vests his or her pension and leaves the service of the City will be entitled to collect a pension benefit commencing on the date he or she would have reached his or her normal retirement date."

Section 3.6.5 of the agreement provides: "Effective upon signing, an employee may purchase up to four (4) years of Military Service time for service in the Armed Forces of the United States for periods of service, any of which occurred during the periods set forth in Section 27-103 of the General Statutes of the State of Connecticut, at the rate payable at the time of entry into City service, with interest at the rate of 7% per annum. The period of such service for which the employee receives credit shall be counted for the purpose of computing the amount of his or her retirement allowance provided such employee shall have completed ten (10) years of continuous service or fifteen (15) years of active aggregate service with the City of Hartford or shall be retired prior thereto, due to disability incurred in the course of his or her employment."

[5] Section 3.3 B of the collective bargaining agreement provides: "The administration of any benefits, including pension benefits, provided under the City Charter, ordinances, the Rules of Procedures of the Hartford Police

the procedure may be instigated by the employee act-
ing alone or, if the employee wishes, with the assist-

Department, the Personnel Rules and Regulations, and this Agreement,
shall be subject to the grievance procedure."

Section 2.1 of the agreement provides in pertinent part: "Any grievance
or dispute which may arise between the parties concerning the application,
meaning or interpretation of this Agreement, shall be settled in the fol-
lowing manner:

"Step 1. The aggrieved employee, who may be represented by an indi-
vidual delegated by the Union Executive Board, if said employee so desires,
shall take up the grievance or dispute with said employee's first level super-
visor who is outside the bargaining unit within seven (7) working days of
the date of the grievance or his knowledge of its occurrence. The first level
supervisor outside the bargaining unit shall render his decision within seven
(7) working days. Such supervisors shall exercise whatever authority may
be delegated to them to resolve grievances, and in the event that no such
authority is delegated, such supervisors shall have no jurisdiction in the
grievance procedure.

"Step 2. If the grievance has not been settled, it shall be presented in
writing, on forms provided by the City, to the Chief of Police by the employee
and/or the individual delegated by the Union Executive Board within seven
(7) working days after the supervisor's response is received. The written
grievance shall include:

"(a) A statement of the grievance and facts involved.

"(b) The alleged violation of the specific provisions of this Agreement.

"(c) The remedy requested.

"The Chief of Police or his designated representative shall render his
decision in writing within 14 working days of the date the grievance was
submitted to him.

"Step 3. If the grievance has not been settled, it shall be presented in
writing to the City Director of Personnel within 5 working days after the
decision of the Chief of Police is received. If he so determines, the Direc-
tor of Personnel, or his designated representative, shall meet with the inter-
ested parties no later than 10 working days after the receipt of the grievance
and in any case shall render his decision in writing within 15 working days
of the receipt of the grievance.

"Step 4. If the Union is not satisfied with the decision rendered in Step 3,
it shall notify the Director of Personnel within 10 working days after receipt
of the decision that it intends to submit the grievance to arbitration; and
shall simultaneously file notice of appeal with the State Board of Media-
tion and Arbitration, which shall act on such request in accordance with
its rules and procedures. Said Board shall be limited to the express terms
of the contract and shall not have the power to modify, amend or delete
any terms or provisions of the Agreement, or render a decision contrary
to law.

ance of a union representative. These steps, to be taken in order, involve presenting the dispute to: (1) the employee's immediate supervisor; (2) the chief of police; and (3) the city's director of personnel. The fourth step, which the union alone has the authority to invoke, is to submit the grievance to binding arbitration.

In July, 1988, the plaintiff purchased the right to apply approximately three years and ten months of his military service toward his pension benefits. At the time, he had worked as a Hartford police officer for approximately seventeen years, three years less than the twenty years required for normal retirement. On July 13, 1988, the plaintiff submitted his resignation to chief of police Bernard R. Sullivan. The resignation was to be effective on October 11, 1988, which, by the plaintiff's calculations, was the date that his actual service time plus his military service time enabled him to retire with pension. Sullivan discouraged this resignation by advising the plaintiff that he lacked sufficient credit to obtain a pension at that time.

At trial, the plaintiff testified that Sullivan's response had been his first warning that there would be difficulty in using the military time up front. The plaintiff testified that he had discussed this matter with Officer Thomas Grodecki, the union vice-president and a member of the Hartford pension commission, as well as several people in the city treasurer's office. He testified that those discussions had led him to believe that he could retire in October, 1988, and that he had been confused by Sullivan's response. Two other police officers also testified that they had spoken with Grodecki,

"The decision of the arbitrator shall be final and binding on the parties.

"Nothing in this article is intended to prohibit the City from processing a grievance through the grievance procedure up to and including arbitration. Such grievance shall be submitted in writing to the Union President. If not satisfactorily resolved within 14 days, such grievance shall be submitted to arbitration. . . ."

and that they had been led to believe that military service time could be used up front.

Grodecki testified, however, that he had not told the plaintiff or anyone else that he could use his military service time up front. He testified that he had been involved in the negotiations with the city regarding the collective bargaining agreement and the military buyback provision, and that it had never been the intention of either party to use the military service time to reduce the twenty years needed for retirement. He testified that the union's goal was to increase the amount of the pension rather than change the time when it came due. Grodecki further testified that after talking to the plaintiff, he had discussed the matter with the city treasurer, who had confirmed his belief that military service time could not be used up front. Grodecki testified that both he and two employees of the city treasury department had independently searched treasury records in search of a Vietnam era veteran[6] who had used his military time up front, and that none of them had uncovered any such precedent.

In July, 1988, the office of the corporation counsel of the city issued an opinion stating that police officers could not use their military service time to advance the date of pension eligibility. Grodecki testified that, although he had put little credence in the opinion because union and corporation counsels tend to be adverse to one another, he believed that it was correct.

Thereafter, the city and the union entered into discussions in order to clarify ambiguities in the collective bargaining agreement. On August 5, 1988, the city

---

[6] It is undisputed that veterans of both world wars were authorized by legislative enactment to use their military service time up front. See 34 Spec. Acts 271, No. 242 (1969); 28 Spec. Acts 581, No. 521 (1957); *Baskiewicz* v. *Hartford,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 70-163609 (December 3, 1970).

and the union entered into an agreement (August agreement) that amended the collective bargaining contract by stating, inter alia, that military service time could not be used up front.[7] Grodecki testified that he had represented the union in these discussions and that he had not objected to this interpretation of the military buy-back provision because "that's what we had [originally] negotiated." Immediately following the meeting, Grodecki posted notices throughout the police department that reported the agreement with the city, stating that military service time could not be used up front.[8]

Grodecki further testified that he had discussed the matter with the plaintiff several times thereafter. He testified that he had advised the plaintiff that military service time could not be used up front and that, if the plaintiff attempted to resign, Sullivan would accept the resignation, but the plaintiff would not begin to receive his pension until his normal retirement date.

On September 26, 1988, the plaintiff resubmitted his letter of resignation to Sullivan. The effective date of resignation was again October 11, 1988. Sullivan accepted this resignation.

Prior to the effective date of resignation, the plaintiff attempted to rescind the letter. Sullivan rejected the plaintiff's rescission. Pursuant to the collective bargaining agreement and with the support of the union, the plaintiff pursued through arbitration a grievance challenging Sullivan's refusal to permit the plaintiff to rescind his resignation. The arbitration panel ruled

---

[7] The August agreement provides in relevant part: "Any eligible military service purchased by a police officer shall be added to the officer's years of service at retirement and shall not be counted towards the required length of service for normal retirement."

[8] The notice, in relevant part, stated in all capital letters that: "Military service *cannot* be used to reduce the required number of years of city service for retirement purposes." (Emphasis in original.)

against the plaintiff. The plaintiff was released from service on October 11, 1988, but his pension application was not forwarded to the Hartford pension commission.

In December, 1988, the plaintiff sent an application for pension directly to the pension commission. On April 12, 1989, after a hearing on the plaintiff's application, the commission denied the application on the grounds that the plaintiff lacked the requisite twenty years of service and that his military time could not be used to supplement his actual service in order to advance his date of pension eligibility.[9]

The plaintiff testified that after his release from service, he had approached both Grodecki and James Quiggley, president of the union, and had asked the union to back his effort to gain his pension. The plaintiff testified that they had refused. A similarly situated police officer testified that he had proposed to Grodecki and Quiggley that the union file a grievance, and that they had refused.

In May, 1989, the plaintiff and twelve other Hartford police officers commenced an action in the Superior Court against the city, the commission, and the union, seeking the right to use military service time up front. In October, 1990, the trial court, *Freed, J.*, granted the motion to dismiss filed by the city and the commission, on the ground that the plaintiffs had failed to exhaust their contractual remedies. The claims against the union remained in place and, pursuant to

[9] The plaintiff's pension payments began in October, 1991, on his normal retirement date. He receives pension benefits in accordance with his seventeen years of actual service plus his three years and ten months of military service. The plaintiff claims damages equal to the three years that his pension was denied, at $24,500 per year, plus interest and the emotional turmoil created by the unexpected loss of income.

Practice Book § 4002,[10] the plaintiffs reserved their right to appeal the granting of the motion to dismiss until a final judgment had been rendered as to all parties.[11]

Thereafter, the plaintiff filed this action. In dismissing the action, the trial court concluded that the plaintiff had failed to exhaust his remedies under the collective bargaining agreement. The court determined that the plaintiff had not invoked the grievance procedure established by the agreement, even though he had the right to proceed through the first three steps without union assistance. The court further found that the plaintiff had relied on unofficial statements allegedly made to him about the union's position on the military buy-back provision, and that there was no evidence that the union had prevented him from invoking the established grievance procedure. The court concluded that the plaintiff had attempted to circumvent the grievance procedures and attack the good faith of the union without making it a party to the action. The court concluded that the plaintiff unjustifiably had failed to exhaust his remedies under the collective bargaining agreement, and that dismissal of the case for lack of subject matter jurisdiction was required by *School Administrators*

---

[10] Practice Book § 4002, as in effect in 1990, provides in relevant part: "APPEAL FROM JUDGMENT DISPOSING OF PART OF ISSUES

"(a) A judgment disposing of certain of the issues between the parties or of part or all of the issues between some of them in such a manner as to be final but not terminating the litigation . . . may be treated as a final judgment for the purpose of an appeal by the party or parties against whom the judgment is rendered, notwithstanding that the cause remains undisposed of on other issues or as to other parties; but the party or parties may, at their option, reserve their appeal until the final judgment is rendered which disposes of the cause for all purposes and as respects all parties; provided, in such a case, that notice of such reserving of appeal shall be filed in the trial court . . . ."

[11] That action is still pending in Superior Court. See *Labbe* v. *Hartford Pension Commission*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-89-362445.

*Assn.* v. *Dow,* 200 Conn. 376, 511 A.2d 1012 (1986), and *Daley* v. *Hartford,* 215 Conn. 14, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). This appeal and cross appeal followed.

I

The plaintiff claims that, in this case, exhaustion of the contractual grievance procedures would have been futile. We agree.

"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. *Vaca* v. *Sipes,* 386 U.S. 171, 184, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); *Republic Steel Corporation* v. *Maddox,* 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965); *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 500, 522 A.2d 264 (1987); *School Administrators Assn.* v. *Dow,* supra, [200 Conn.] 381-82." *Daley* v. *Hartford,* supra, 215 Conn. 23. Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. Id.; *School Administrators Assn.* v. *Dow,* supra, 382.

The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon

both the negotiation and administration of collective agreements." (Internal quotation marks omitted.) *School Administrators Assn.* v. *Dow,* supra, 200 Conn. 382; see *Republic Steel Corp.* v. *Maddox,* supra, 379 U.S. 650; see also *Tedesco* v. *Stamford,* 222 Conn. 233, 250–52, 610 A.2d 574 (1992); *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 93, 448 A.2d 210 (1982).

Nevertheless, we have "grudgingly carved several exceptions from the exhaustion doctrine . . . including one where the administrative remedy is inadequate or futile." (Citation omitted; internal quotation marks omitted.) *Cahill* v. *Board of Education,* 198 Conn. 229, 241, 502 A.2d 410 (1985); see *Glover* v. *St. Louis-San Francisco Ry. Co.,* 393 U.S. 324, 89 S. Ct. 548, 21 L. Ed. 2d 519 (1969); *Vaca* v. *Sipes,* supra, 386 U.S. 185; *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 542, 469 A.2d 382 (1983); *Kosinski* v. *Lawlor,* 177 Conn. 420, 425, 418 A.2d 66 (1979). This case fits within that exception.

On August 5, 1988, when the union and the city entered the agreement stating that military service time could not be used up front, they effectively predetermined the outcome of the contractual grievance procedures.[12] The first three steps of the procedure required the plaintiff to seek relief from the plaintiff's supervisor, the chief of police, and the city director of personnel. These actors—each of whom was a union member, city employee, or both—were con-

---

[12] Arguably, the plaintiff could have filed a grievance on July 13, 1988, the date that Sullivan's response to the plaintiff's first letter of resignation put the plaintiff on notice that there might be a problem. At that time, the August agreement had not yet been entered. We cannot, however, attach decisive importance to the date of Sullivan's response. It is unclear when this grievance could first have been filed. We note, however, that the plaintiff did not officially fail to receive his pension until after he left service on October 11, 1988. By that time, the parties had entered the August agreement.

strained to consider themselves legally bound by the August agreement to reject the plaintiff's claim.[13] The fourth step of the grievance procedure, which could have been invoked only after taking the first three steps, involved the union's submission of the plaintiff's grievance to arbitration. Realistically, however, the union could not have submitted the plaintiff's claim to arbitration because the union had already taken a formal position adverse to the plaintiff. The union had entered into an agreement with the city on the pension issue, and publicized its position to its membership by posting notices. In short, all of the potential officers or entities to whom the plaintiff could take his grievance were treating the August agreement as legally binding, thus effectively foreclosing themselves from granting or pursuing the plaintiff's grievance. In light of the August agreement, therefore, it would have been futile for the plaintiff to follow the grievance procedures. "The law does not require the doing of a useless thing." *Corsino* v. *Glover*, 148 Conn. 299, 308, 170 A.2d 267 (1961).

This case is distinguishable from recent cases in which we have rejected the plaintiff's claim of futility because in those cases the grievance procedures remained capable of providing the plaintiff with the desired relief. In *Housing Authority* v. *Papandrea*, 222 Conn. 414, 610 A.2d 637 (1992), we considered an action by the housing authority of East Hartford seeking to enjoin the commissioner of the Connecticut department of housing from operating certain rental assistance programs. The housing authority had failed to employ the procedures designed to permit challenges to the commis-

---

[13] We do not determine whether these actors were actually bound by the August agreement because the legitimacy of that agreement is part of the substance of the underlying case. It is sufficient, for purposes of futility, that the agreement was facially valid, and that the relevant actors were not in positions to challenge its validity.

sioner's actions. The housing authority contended that using the procedures would have been futile because the commissioner had already taken an adverse position in an advisory letter. Although we recognized the futility doctrine, we held that the fact that the commissioner had taken a position in a letter "did not relieve the [housing authority] of its obligation to pursue its administrative remedies in an effort to persuade the commissioner that his position was legally incorrect." Id., 432.

In *Papandrea,* there was independent legal authority to be considered by the commissioner in determining the propriety of his prior actions, and the commissioner was legally free to change his position in light of that authority. In the present case, however, the military buy-back provision was solely the product of negotiations between the signatories to the collective bargaining agreement. Once the signatories reached an agreement on the interpretation of the buy-back provision, there was no independent legal authority capable of compelling a different interpretation, and neither signatory considered itself as having any discretion to interpret the provision differently. Thus, the August agreement contained the parties' final positions on the issue.

Similarly, in *Polymer Resources, Ltd.* v. *Keeney,* 227 Conn. 545, 630 A.2d 1304 (1993), Polymer Resources, Ltd. (Polymer), sought to enjoin the defendant commissioner of environmental protection from requiring it to modify its pollution control systems. The commissioner and Polymer had been engaged in an ongoing process of testing and compromise, in an effort to find conditions satisfactory to both parties, when Polymer sought a remedy in the Superior Court. Polymer had not exhausted the ordinary route of administrative appeal. Although we noted that the commissioner's most recent pronouncement was adverse to Polymer,

we noted that the commissioner remained willing to "modify or eliminate" its conditions. Id., 562. Thus, pursuing remedies within the agency would not have been futile. In the present case, however, the parties to the agreement treated it at the time as final and binding. Consequently, using the contractual grievance procedures would have been futile, which excuses the plaintiff from failing to invoke them. Thus, the trial court improperly dismissed the case for lack of subject matter jurisdiction.

## II

We turn next to the defendants' cross appeal. The defendants claim that the plaintiff's appeal is barred by the doctrine of res judicata. Specifically, the defendants contend that the case filed by the plaintiff and twelve other Hartford police officers in May, 1989, which was dismissed as to the defendants in the current appeal for lack of subject matter jurisdiction because the plaintiffs had failed to exhaust contractual remedies, is a final judgment that precludes relitigation of the same issues. We disagree.

Although the defendants present this claim as a cross appeal, it is not a true cross appeal under Practice Book § 4005[14] because the defendants were not aggrieved. Rather, the claim is an alternative ground for affirming the trial court's judgment of dismissal under Practice Book § 4013.[15] See *Cioffoletti* v. *Planning & Zoning*

---

[14] Practice Book § 4005 provides in relevant part: "CROSS APPEALS

"Any appellee or appellees aggrieved by the judgment or decision from which the appellant has appealed may jointly or severally file a cross appeal within ten days from the filing of the appeal. Except where otherwise provided, the filing and form of cross appeals, extensions of time for filing them, and all subsequent proceedings shall be the same as though the cross appeal were an original appeal. . . ."

[15] Practice Book § 4013 provides in relevant part: "[FILING APPEAL] —ADDITIONAL PAPERS TO BE FILED BY APPELLANT AND APPELLEE

"(a) At the time the appellant sends a copy of the endorsed appeal form

*Commission,* 209 Conn. 544, 547 n.1, 552 A.2d 796 (1989). The defendants have not, however, presented sufficient grounds for an affirmance.

The judgment of the trial court in the other action was based on a lack of subject matter jurisdiction. Res judicata with respect to a jurisdictional issue does not itself, however, constitute a jurisdictional issue. *Zizka* v. *Water Pollution Control Authority,* 195 Conn. 682, 687, 490 A.2d 509 (1985); *Basilicato* v. *National Amusements, Inc.,* 3 Conn. App. 667, 668 n.2, 491 A.2d 1106 (1985). Res judicata does not provide the basis for a judgment of dismissal; it is a special defense that is considered after any jurisdictional thresholds are passed. See Practice Book § 164; *Jackson* v. *R.G. Whipple, Inc.,* 225 Conn. 705, 712, 627 A.2d 374 (1993). "Of course, there is no reason why, in an appropriate case, once the defense of res judicata has been raised the issue may not be resolved by way of summary judgment." *Zizka* v. *Water Pollution Control Authority,* supra, 687. The trial court's judgment of dismissal of this action on the basis of subject matter jurisdiction cannot, however, be affirmed on the basis of res judicata.

The judgment is reversed, and the case is remanded to the trial court for further proceedings according to law.

In this opinion the other justices concurred.

and the docket sheet to the appellate clerk, the appellant shall also send the appellate clerk an original and one copy of the following:

"(1) A preliminary statement of the issues intended for presentation on appeal. If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of the issues. . . ."