[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO DISMISS
The following facts are pertinent to the resolution of the motion to dismiss in this case, which the plaintiff has styled as an administrative appeal but which, in fact, is an independent civil action seeking damages and other relief for wrongful discharge based on disability discrimination:
The defendant Area Cooperative Educational Services (ACES), hired the plaintiff, Judith Murphy, in 1985 as a certified staff school psychologist. She eventually became tenured and continued working in that capacity through June of 1993, when she was notified by the named defendant, Peter Young, the executive director of ACES, that her position was to be eliminated. On July 8, 1993, The ACES Governing Board voted to terminate her, giving rise to the present action.
Plaintiff's employment was governed by the ACES Board, subject to the provisions of General Statutes § 10-151 and a collective bargaining agreement, dated June 11, 1991, which prescribed the procedures the Board was to utilize in seeking to dismiss certified staff.
On May 17, 1993, the plaintiff notified Young of her need to undergo surgery for breast cancer. On May 20, 1993, Young gave the plaintiff notice of his intention to have the ACES Board terminate her employment based upon an alleged decline in enrollment, budget modifications. and staff reductions that resulted in the need to eliminate her position. However, on May 27, 1993, he formally advised her by letter that if the ACES Board did terminate her contract, her seniority would make her eligible to displace, or "bump", a junior staff member. In response to this notice, the plaintiff on or about June 4, 1993 CT Page 13247 notified ACES in writing of her "intention to displace a junior staff member based upon seniority."
On June 15, 1993, Young formally notified the plaintiff that the ACES Board would convene on July 8, 1993 to consider termination of her contract. On June 21, he informally notified her that he had overridden her seniority, and on July 2, she requested in writing that ACES set forth written reasons for the override.[1]
Following the July 8 Board meeting, the plaintiff was formally notified that the Board had voted not to renew her contract for the 1993-1994 school year. No written explanation of the reasons for the override of her seniority was ever provided.
Plaintiff did not at this or any other time request a hearing before the ACES Board pursuant to General Statutes § 10-151(d) concerning either the termination itself[2] or the override of her seniority.[3] Instead, on August 5, 1993, she filed this action in the Superior Court. Although she utilized the Judicial Branch codes for an Administrative Appeal[4] on the cover sheet of her complaint and recited that she is statutorily aggrieved by the Board's decision, the complaint itself, as amended, in fact sounded in wrongful discharge based on disability discrimination.[5]
The defendants have now moved to dismiss all four counts of the plaintiff', amended complaint pursuant to Practice Book §§ 143. et seq. They contend that the plaintiff has failed to exhaust administrative remedies and to avail herself of grievance procedures provided by her contract with the defendants, thereby depriving this court of subject matter jurisdiction.[fun]
"The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . ." Practice Book § 143 Plasil v. Tableman, 223 Conn. 68. 70 n. 4, 612 A.2d 763
(1992). "A motion to dismiss tests, inter alia, whether on the face of the record, the court is without jurisdiction." Upson v.State, 190 Conn. 622, 624, 461 A.2d 991 (1983). "[A] motion to dismiss is the proper vehicle to attack the jurisdiction of the court. A motion to dismiss essentially asserts that, as a matter of law and fact, the plaintiff cannot state a cause of action that is properly before the court." Third Taxing District v.Lyons, 35 Conn. App. 795, 803, 647 A.2d 32 (1994). CT Page 13248
"[B]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff['s] claim."Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556,529 A.2d 666 (1987). "The determination of whether a statutory requirement implicates the subject matter jurisdiction of the court must be informed by the established principle that every presumption is to be indulged in favor of jurisdiction." Tolly v.Department of Human Resources, 225 Conn. 13, 29, 621 A.2d 719
(1993).
Although this case has been pending for more than two years and an answer and special defenses have already been filed, the court must nonetheless consider and resolve the motion to dismiss before proceeding further. Subject matter jurisdiction cannot be created by waiver or consent of the parties, and the issue may be raised at any time. Castro v. Viera, 207 Conn. 420, 429-430
(1980); Practice Book § 145.
With respect to counts one, two and four, the defendants allege that the plaintiff has "failed to pursue, much less exhaust, the administrative remedies available under the Teacher Tenure Act, Conn. Gen. Stat. § 10-151." They further claim that count three should be dismissed because "plaintiff totally failed to avail herself of her administrative remedies under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§46a-51 et seq." (hereinafter CFEPA or § 46a-51). In response, the plaintiff argues that she in fact did avail herself of her administrative remedies, or, in the alternative, that she was excused from pursuing any administrative remedies because doing so pursuant to General Statutes § 10-151 would have been futile and because adequate relief would not have been available under General Statutes § 46a-51, et seq.
The exhaustion doctrine was summarized recently in O GIndustries. Inc. v. Planning Zoning Commission, 232 Conn. 419,425, 655 A.2d 1121 (1995): "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." Housing Authority v.Papandrea, 222 Conn. 414, 420, 610 A.2d 637 (1982); LaCroix v.Board of Education, 199 Conn. 70, 83-84, 505 A.2d 1233 (1986). "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the CT Page 13249 agency's finding and conclusions." Concerned Citizens of Sterlingv. Sterling, supra, 204 Conn. 557; Housing Authority v.Papandrea, supra, 222 Conn. 420. "[W]hen a party has a statutory right of appeal from the decision of the administrative agency, he may not, instead of appealing, bring an independent action to test the very issues which the [administrative] appeal was designed to test." Pet v. Department of Health Services,207 Conn. 346, 352, 542 A.2d 672 (1988),
The decision not to renew plaintiff's contract of employment was originally made by Young, ACES' executive director, and then affirmed by the governing board at the July 8, 1993 meeting. General Statutes § 10-151 and the provisions of the Collective Bargaining Agreement required plaintiff request a hearing before the ACES Board within twenty days of official notice that termination was to be considered by the ACES Governing Board.
Plaintiff's contention that she in fact did request a hearing pursuant to General Statutes § 10-151(d) when she requested, in writing, that the defendant "demonstrate" the reasons for his decision to override her seniority, and that his failure to respond amounted to an exhaustion of the administrative process, is unavailing. Her request for a written clarification is not the same thing as a request for a hearing. In her request for clarification, she does not mention General Statutes § 151(d) or the word "hearing", nor does she employ any other terminology to suggest that she had in mind anything more than a personal communication from Young, or a member of his staff, clarifying the decision for her. In addition, plaintiff never pursued the notion of a hearing beyond the letter requesting clarification of defendants' reasons for the override. Moreover, although Young's initial communications with the plaintiff spoke of the elimination of her school psychologist position, his subsequent notification that the July 8 meeting was being held for the purpose of terminating her employment, coupled with notification that her seniority was being overridden, all served to place her on notice that if she wished to act to protect her rights, she would have to request a hearing as contemplated by statute.[7]
Second, plaintiff's claim that she treated the decision of the defendant and the governing board as a final decision, and by filing suit, initiated an administrative appeal, is undermined by her subsequent claim to the jury list, a forum not available for administrative appeals. Her attorney's utilization of the CT Page 13250 Judicial Branch's coding system for administrative appeals and of aggrievement terminology cannot convert a direct suit into an exhaustion of administrative remedies. Her claim in this regard is further belied by her seeking of punitive damages, a form of relief that could not be awarded in an administrative appeal.
Third, the plaintiff argues that she was excused from requesting a hearing as a result of the defendants' failure to demonstrate to her the reasoning for her termination and the override of her seniority. She claims that the defendants were required to demonstrate their reasoning under the terms of Article XVII of the collective bargaining agreement, and that the failure to do so somehow excuses her from even having to request a hearing. She bases this argument on Lee v. Board of Education,181 Conn. 69, 79, 434 A.2d 333 (1980), in which the court set forth the following requirements under § 10-151: "[A] tenured teacher discharged for cause under General Statutes 10-151 (b) is entitled, as a matter of constitutional law, to a written statement of the decision reached, the reasons for the determination, and a fair summary of the evidence relied upon." See also Halpern v. Board of Education, 196 Conn. 647, 650,495 A.2d 264 (1985). The contractual and statutory vehicle for obtaining such a statement, however, is a hearing. Neither the statute nor the Collective Bargaining Agreement makes any reference to a "request for clarification", and the defendants were not bound to treat the July 2, 1993 letter, which was addressed to ACES Assistant Executive Director Cheryl Saloom, as a request for a hearing.[8]
Finally, plaintiff argues that it would have been futile to exhaust her remaining administrative remedies because of: (1) Young's having already made the decision not to renew her contract and to override her seniority several weeks prior to the meeting at which the Governing Board was to discuss her status; (2) Young's virtually unfettered discretion to make the override decision; and (3) Young's alleged assertion that the was not required to provide her with an explanation for the override[9]
even after she requested one.
Although exceptions to the exhaustion doctrine do exist, the courts have traditionally been reluctant to allow them. In Labbev. Pension Commission, 229 Conn. 801, 812, 643 A.2d 1268 (1994), for example, the Supreme Court stated: "we have `grudgingly carved several exceptions from the exhaustion doctrine . . . one where the administrative remedy is inadequate or futile.'" CT Page 13251 (Citation omitted). However, in Labbe, the court noted that even though the Pension Commissioner had stated a position contrary to the plaintiff in an advisory letter, this "did not relieve the . . . [plaintiff] of its obligation to pursue its administrative remedies in an effort to persuade the commissioner that his position was legally incorrect." Id. 814. That situation is very much like the one in this case.
In Simko v. Ervin, 234 Conn. 498, 508, ___ A.2d ___ (1995) the court stated "[w]e recently held that when a party's suspicion of bias on the part of a zoning commission is purely speculative, such a suspicion does not render pursuit of administrative remedies futile," quoting from O G Industries Inc. v. Planning Zoning Commission, supra, 232 Conn. 429 and Labbe v. PensionCommission, supra, 229 Conn. 814. Clearly, the plaintiff suspects that the defendants were biased against her because of her illness, based on the timing of Young's notifying her of the intent to terminate her position, just three days after she announced her need for surgery for breast cancer. Other than the timing, however, plaintiff has offered no evidence to support her claim of bias, leaving it well within the realm of that sort of speculation that will not excuse a failure to exhaust on grounds of futility.
In Housing Authority v. Papandrea, supra, 222 Conn. 424, andConcerned Citizens of Sterling v. Sterling, supra, 204 Conn. 559, the court placed limits on the use of the futility exception. "[W]e have never held that the mere possibility that an administrative agency may deny a party the specific relief requested is a ground for an exception to the exhaustion requirement." In light of the foregoing cases, the plaintiff has failed to provide a basis for concluding that it would have been futile for her to have to exhaust her administrative remedies.
"Access to the courts under the Teacher Tenure Act is possible only on appeal of a decision of the board of education."Kolenberg v. Stamford Board of Education, 206 Conn. 113, 121,536 A.2d 577 (1988), cert. denied 487 U.S. 1236, 108 S.C. 2903. Further, failure to pursue administrative remedies under §10-151 is fatal to contract claims. School Administrators Assn.v. Dow, 200 Conn. 376, 384-85, 511 A.2d 1012 (1986); LaCroix v.Board of Education, supra, 199 Conn. 84. Plaintiff's failure to comply with the general rule of exhaustion of administrative remedies prior to pursuing her action in the Superior Court is therefore fatal to counts one, two and four of her complaint. She CT Page 13252 has not provided an adequate basis for the futility exception, and she has not explained her failure to do more than "request a clarification" in order to excuse her from this fundamental requirement, thus depriving the court of jurisdiction over those counts.
As to the third count, the defendants seeks dismissal based on the same arguments that they advanced with respect to the other counts, and additionally because they claim that the plaintiff has not exhausted her administrative remedies under General Statutes § 46a-51, et seq., the Connecticut Fair Employment Practices Act. That Act vests first-order administrative oversight, investigation and enforcement of employment discrimination claims in the Commission on Human Rights and Opportunities (CHRO). Sullivan v. Board of Police Commissioners,196 Conn. 208, 216, 491 A.2d 1096 (1985). Sullivan, however, excuses exhaustion of administrative remedies when those remedies would be "plainly inadequate", id. at 217. The plaintiff therefore argues that since CHRO has no authority to grant punitive damages[10], something which she seeks in this action, she was not required to exhaust her administrative remedies with CHRO. She relies on several trial court cases which specifically address this issue.
In Stevens v. E.R. Champion Sons. Inc., Superior Court, Judicial District of New London at New London, Docket No. 527449 (May 26, 1994, Hurley, J.), the court held that where the plaintiff has brought an action in Superior Court under the Connecticut Fair Employment Practices Act (CFEPA § 46a-51, et seq.) for punitive damages, plaintiff need not exhaust its administrative remedies through CHRO. "[T]he administrative remedies available to plaintiff in this matter are plainly inadequate and the plaintiff is not required to exhaust his administrative remedies." In this case, however, Judge Hurley relied on such prior Superior Court decisions as Richter v. Hoffman, 6 CSCR 641,642 (June 11, 1991, Lewis, J.) and Paradise v. Time FibersCommunications. Inc., 1 CSCR 444, 445 (June 27, 1986, Hadden, J.) in which the plaintiffs had gone to CHRO and had filed suit only after CHRO had dismissed their claims.[11] See, also, Turgeonv. DuPlease, 1991 Ct. Sup. 8590 (Oct. 2, 1991, Spear, J.). Having at least taken the initial step of going to CHRO, these plaintiffs were permitted to pursue in Superior Court relief not available to them through that agency without being first required to appeal the CHRO decision. In this case, of course, the plaintiff did not even file a complaint with CHRO to see CT Page 13253 whether an adequate remedy might be available to her.
Similarly, in the other case cited by plaintiff, Seebeck v.McLaughlin Research Corp. , Superior Court, Judicial District of New London at New London, Docket No. 530884 (February 16, 1995, Hendel, J.), although the court stated:
 The pending administrative actions do not deprive this court of subject matter jurisdiction. The doctrine of exhaustion of administrative remedies is inapplicable to the present case because the plaintiff's claim for punitive damages is unavailable through CHRO. Consequently, the administrative remedies are inadequate as a matter of law . . .
that was a case in which the plaintiff had gone to CHRO, which had indicated that punitive damages would be available to the plaintiff if the evidence supported her claims, but that CHRO was unable to award punitive damages. Under these circumstances, the plaintiff's failure to continue to pursue her remedies via an appeal of the CHRO decision was excused. In this case, in contrast, the plaintiff never even went to CHRO. The exhaustion requirement would be totally meaningless if all a plaintiff had to do to avoid the statutorily prescribed process was to add to its prayer for relief a remedy not available to it through CHRO.
In this case, all of the remedies the plaintiff now seeks, except punitive damages and attorneys' fees, are ones which would have been available had she pursued a complaint with CHRO. While the remedies that would have been available to her might not have exhausted the full range of potential remedies that she may have wished to pursue, this is not necessarily the same thing as saying that the available remedies were "plainly inadequate" as a matter of law.
In Housing Authority v. Papandrea, supra, the plaintiff Housing Authority had challenged the defendant's attempt to administer a Section 8 program by bringing suit in Superior Court. The Court held that it lacked subject matter jurisdiction because the plaintiff failed to exhaust its administrative remedies. The Supreme Court stated: "We therefore reject the plaintiff's claim that its request for injunctive relief obviated the requirement that it [plaintiff] exhaust the available administrative remedies before filing an action in the Superior Court. . . [T]he plaintiff cannot avoid the operation of §4-176(a) by the mere inclusion in its complaint of a claim for CT Page 13254 injunctive relief." (Internal quotations omitted.)222 Conn. at 424.
Although, as a general rule, a plaintiff need not exhaust administrative remedies if "the agency lacks authority to grant the requested relief," Payne v. Fairfield Hills Hospital,215 Conn. 675, 680 n. 3, 578 A.2d 1025 quoting from Cannata v.Department of Environmental Protection, 215 Conn. 616,577 A.2d 1017 (1990), this general rule does not excuse the plaintiff from turning first to CHRO to determine whether the remedies that the agency may afford will be adequate.
The plaintiff, having failed to follow the administrative route that the legislature has prescribed for her claim of discrimination, lacks the statutory authority to pursue that claim in the Superior Court. Sullivan v. Board of PoliceCommissioners, supra, 196 Conn. 216. Her failure to bring her disability discrimination claim to CHRO deprives this court of jurisdiction over her CFEPA count.
For the above reasons, all four counts of the plaintiff's complaint are dismissed.
Jonathan E. Silbert, Judge