[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS
The defendants have moved to dismiss the second amended complaint claiming the court lacks jurisdiction to hear this case. The complaint is characterized as alleging workplace sexual harassment and hostile work environment and the claim is made that state and federal law requires that administrative remedies for workplace sexual harassment claims be exhausted before the court can obtain jurisdiction over them. The defendants argue that the plaintiff failed to exhaust those remedies because she (a) failed to obtain a `right to sue' letter from the Commission on Human Rights and Opportunities (CHRO); (b) the right to sue letter from the U.S. Equal Employment Opportunities Commission (EEOC) that was obtained only authorized suit against parties who are not named defendants; (c) even if the EEOC letter authorized suit against the CT Page 7975 defendant the authorization was to bring suit within 90 days and both the amended and second amended complaint are therefore untimely; (d) individual defendants cannot be sued for employment discrimination because they are not "employers" as defined in state and federal law; (e) the plaintiff failed to pursue remedies available to her on the Mohegan reservation where she was employed which were set forth in an employer provided handbook or manual.
The procedural context in which such a motion must be decided is set forth in the commentary to Practice Book § 10-31 in ConnecticutPractice, Vol. 1, 4th Ed., Horton and Knox at page 358:
 "When the motion to dismiss does not seek to introduce facts outside of the record, it admits all well pleaded facts, the complaint being construed most favorably to the plaintiff. Duguay v. Hopkins, 191 Conn. 222, 227, 464 A.2d 45, 49 (1983); . . . . A plaintiff seeking to go beyond the facts in the complaint must file an affidavit with the memorandum of law. Boyd v. Payne, 16 Conn.L.Trib. No. 18, p. 29 (1990). While this rule permits the filing of affidavits, if there is a disputed issue of fact, the motion cannot be decided solely on affidavits. Carron v. Taylor, 1 Conn. Sup. 30 (1986). The Appellate Session of the Superior Court has ruled that a factual hearing on the motion must be held if necessary. Garden Mutual Benefit Association v. Levy, 37 Conn. Sup. 790, 437 A.2d 141 (1981). . . .
 Recognizing the necessity and value of affidavits to assert undisputed facts, the Supreme Court noted, in Barde v. Board of Trustees, 207 Conn. 59 (1988), that a trial court may rely upon the affidavits to determine the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint."
The court will now discuss each of the counts in light of the claims raised in the motion to dismiss.
 I
As to the first count, a claim is made in negligence against the defendant, Pettitt. The plaintiff was a limousine driver at the Mohegan Sun Casino and her claim in this count is that an individual defendant, Ms. Pettitt, who was a supervisor-employee of the entity "controlled by" CT Page 7976 the three corporate defendants ordered her to operate a certain limousine. The limousine had mechanical problems which according to the complaint made it dangerous and unhealthy to drive — carbon monoxide and freon leaked into the cab. The plaintiff alleges she operated the limousine as instructed and became "very sick." It appears to be alleged that the individual defendant knew or should have known the vehicle was unsafe.
There are no allegations in this court of sexual harassment nor of a hostile work environment permeated with discriminatory intimidation. It is a simple negligence claim so exhaustion arguments under state and federal law would not appear to apply to the allegations of this court. Rather, the argument appears to be that the plaintiff is precluded from bringing this negligence count because she failed to exhaust administrative remedies provided to her in the employer handbook. Not relying on affidavit or testimony to verify that a grievance type procedure to resolve the plaintiff's problems existed at the time of the incidents in question or that it applied to the plaintiff's situation, the defendants attach to their motions to dismiss what purports to be pages from an employee manual of Mohegan Sun which was the plaintiff's immediate employer. Both sides have attached to their complaints only certain portions of this employee manual. The court cannot be absolutely sure that the manual created an implied contract of employment providing for progressive discipline and a means to resolve work related disputes, cf. considerations alluded to in Gaudio v. Griffin Health ServicesCorp., 249 Conn. 523 (1999). Assuming, however, that it did create such an implied contract, the language of Labbe v. Pension Commission,229 Conn. 801, 811 (1994) might be considered applicable.
 "It is well settled under both federal and state law that, before resort to court is allowed, an employee must at least attempt to exhaust exclusive grievances such as those contained in the collective bargaining agreement between the defendant and the plaintiff's union. Failure to exhaust the grievance procedure deprives the court of subject matter jurisdiction."
The dispute resolution procedure outlined in the manual is not part of a collective bargaining agreement. But if, in fact, it is part of an implied contract of employment, why should it not have similar binding effect on the rights of both sides when common law claims are sought to be advanced?
However, assuming this observation is correct, exhaustion should not always be required in this type of an employment situation before common law claims are advanced. CT Page 7977
By analogy to cases that hold that exhaustion of remedies before a state agency is not required where such action would be futile or the remedy inadequate. Sullivan v. Board of Commissioners, 196 Conn. 208,216-17 (1985), cf. St. Germaine v. Bickford, 20 CLR 2321 (1997), exhaustion should not be required here. There is no provision for the award of money damages in the Mohegan Sun Manual. Even if that factor were not to be regarded as controlling, given the language of the manual it would be an odd and too strained interpretation of its import to say that it gave the employee a right to protest and refuse to obey immediate orders of a supervisor at his or her peril — such as here, the order to drive the limousine in question. The manual's language talks about complaints within three days of a problem; if the employee is then not satisfied with response to a complaint he or she can go to the next level within five days etc. The problems sought to be addressed by this manual do not appear to be concerned with ad hoc discrete orders by a supervisor and nothing to the contrary has been provided to the court by the defendants by means of affidavits, etc. explaining the import of the employee manual.
Besides, the manual provides arguably for a mechanism to try to settle or adjust employee/employer problems within the context of the employment situation. Nothing set forth in the manual should necessarily have anything to do with defining the rights or procedural order for asserting common law claims against individuals who may be part of management but who allegedly committed an otherwise actionable tort against a fellow employee.
However, the court will not grant the motion to dismiss the first count based on the jurisdictional grounds that have been raised.[1]
 II
The second, third and fourth count can all be analyzed together. They make various allegations against the same defendant, Pettitt, who, as noted, was the plaintiff's supervisor. The second count lies in "willful, wanton and reckless conduct," the third count, intentional battery; the fourth count makes a claim for negligent or willful battery.
As to the second count, all the allegations in the first negligence count are repeated and added on is an allegation in paragraph 13 that the defendant, Pettitt, several months before the limousine incident "had repeatedly asked plaintiff to participate in three way sex with herself and her lover" — another limousine driver. It is then alleged that after the plaintiff's refusal a promotion offered to her was withdrawn at CT Page 7978 Pettitt's request and Pettitt bore her "ill will."
The Mohegan Sun handbook according to paragraph 15 of the second count explicitly prohibits those types of "requests for sexual favors" and from having to work in a hostile environment.
The second count goes on to allege that Pettit, in ordering the plaintiff to drive the limousine, intended her to be injured or acted recklessly with respect to the possibility of such injury occurring. She also created a hostile work environment in violation of the handbook.
The third count repeats all the allegations of the negligence count adds them to the allegations of the second count then states Pettitt committed an assault on the plaintiff as defined in the penal code by assigning her to drive the limousine and, in fact, intended to cause the plaintiff harm — this is said to be intentional battery.
The fourth count in negligent or willful battery against Pettitt repeats the allegations of the negligence count and all previous allegations of the second and third counts. The count goes on to make an allegation of reckless conduct — it was reckless of Pettitt to order the plaintiff to drive this vehicle when she knew it had been taken out of service and was unsafe.
These counts are not subject to dismissal for failure to exhaust any remedies provided for in the employer's handbook for the reasons stated in the discussion of the first count.
Also, these common law causes of action against the defendant, Pettit, are not barred because of a failure to exhaust administrative remedies under our state Fair Employment Practices Act. As pointed out inCantavero v. Horizon Meat and Seafood Dist., 19 CLR 333 (1997) Pettitt's actions are not covered by the act because she is not an "employer". Section 46-51 defines an "employer" as "any person or employer with three or more persons in his (sic) employ." A supervisor cannot individually be held liable for a sexual harassment claim, cf. Martinez-Duffy v.DeJesus, 17 CLR 64. Since the plaintiff could not have filed a claim against Pettit under the act, as Cantavero points out "the defendants' argument regarding exhaustion of administrative remedies is without merit." As the latter case points out it is also true that there is nothing to indicate that the legislative intended to preempt the field of employment discrimination or sexual harassment claims by requiring parties who claim to have been injured to pursue only remedies under the act; several cases have recognized the viability of common law actions in addition to claims made under § 46a-60 of the act. Cantavero refers to Paradise v. Times Fiber Comm., Inc. 1 CSCR 444 (1986), Shyrer v.CT Page 7979Assoc. Pulmonologists, 17 CLR 539 (1996); Rene v. The Institute, Inc.,18 CLR 316 (1996); Chelstowski v. New Horizon Mfg. Co., 2 CSCR 962
(1981).[2]
The motion to dismiss the second, third and fourth counts is denied.
 III
The fifth count of the complaint is entitled "wrongful discharge under C.G.S. § 31-290a." Broad references are made to "the defendants" throughout this count — presumably including individual defendants — but clearly under the statute only the employer" is subject to suit for violation of the statute. The allegations include all previous allegations made in all the preceding counts including the allegations of sexual harassment and hostile work environment.
In paragraph 28 the plaintiff alleges that she filed a claim with the Workers' Compensation Commission on December 4, 1998 due to her work related injury of November 18-19, 1998. This again is the injury she allegedly received as a result of being told to drive a defective vehicle which in turn came about because the supervisor who ordered her to drive the limousine bore the plaintiff ill will for refusing to engage in sexual activities.
In paragraph 30 the plaintiff says she was terminated on December 12, 1998 and was told she was being fired because she had missed time from work. In paragraph 33 the plaintiff claims she was fired in violation of the state's public policy, specifically § 31-290a which prohibits discrimination against or discharge of a worker for filing a compensation claim. Subsection (b) of the act authorizes "a civil action in the Superior Court." The following paragraph makes a totally unrelated allegations that the plaintiff was terminated because she had complained about sexual harassment in violation of §§ 46a-58 and 46a-60 (1)(4)(5) and (8). Paragraph 35 then says the Human Resources Department of the employer failed to protect her from claims of sexual harassment.
This is so because as the defendants allege in their motion to dismiss the plaintiff failed to exhaust her administrative remedies under the state Fair Employment Practices Act. The plaintiff seems to concede this in her brief opposing the motion. There is no allegation in the complaint that any administrative remedies were pursued under the act or that the plaintiff secured a right to sue letter. Insofar that this count asserts a claim for wrongful termination under §§ 46a-58 or 46a-60 or somehow makes a claim based on the employer's failure to protect her from sexual harassment these claims must be dismissed for failure to exhaust administrative remedies. Atkins v. Bridgeport Hydraulic Co., CT Page 79805 Conn. App. 643, 647 (1985). Therefore, the court will strike paragraphs 34 and 35 of the fifth count of the complaint.[3]
However, the court is obligated to give the allegations of the complaint their most favorable inference. The allegations of the complaint in the fifth count can be read as simply asserting a claim that the plaintiff was fired because she made a workers' compensation claim. It is not specifically alleged nor can it necessarily be inferred that the defendant, Fage another supervisor, or the medical department of the employer forestalled the plaintiff's return to work or created confusion on her part as to whether she could do so because of anything having to do with the sexual harassment the plaintiff alleges she was subject to or because of the hostile work environment that harassment created. In other words, even if injuries caused to the employee by sexual harassment prevented the employee from working for a period of time, a valid employer allegation of failure to return to work after the effect of those injuries had abated would not constitute wrongful termination under § 31-290a merely because a workers' compensation claim had been filed for the initial injury.
The court will not dismiss this count at the present time and it should not be stricken as long as it remains confined to the parameters above referenced. It should. also be noted that paragraph 13, alleging sexual harassment, insofar as it has been added to this count should also be stricken and any claims under this count against individual defendants will not lie.
 IV
The sixth count asserts a "Breach of Covenant of Good Faith and Fair Dealing (as to all defendants)." All previous paragraphs of the complaint are incorporated in this count and the claim is made for unlawful discharge because of a violation of § 46a-60 and violation of §31-290a.
This allegation is difficult to understand insofar as it appears to make a claim against individual defendants. They were not in an employment relationship with the plaintiff. A motion to strike could have been directed toward this count insofar as it is directed against individual defendants; the court, however, will treat this present motion as a motion to strike as regards claims against individual defendants and grant it.
Any claim under § 46a-60 is barred for failure to exhaust administrative remedies as previously discussed insofar as this count against the corporate defendants makes such a claim or incorporates such CT Page 7981 a claim. Regarding any allegation made against the corporate defendants, a common law claim for breach of the covenant of good faith and fair dealing for wrongful discharge a la Sheets cannot be made because §31-390 (a) provides for a statutory remedy for discharge based on the filing of a workers' compensation claim. Burnham v. Karl Gelb, P.C.,252 Conn. 153, 162 (2000).
 V
The seventh count is entitled "Negligence (as to all Corporate Defendants and Brian Fage)."
In paragraph 37, several different factual allegations are made all relating to the sexual harassment of the plaintiff and the failure of the corporate defendants to protect the plaintiff from this activity. This count references all the previous paragraphs of the complaint wherein the sexual harassment allegations are made by reference to § 46a-60 of the General Statutes, see paragraph 36, for example. That being the case, the allegations in count 37 against the corporate defendants must be dismissed for failure to exhaust administrative remedies. Also the sexual harassment claim is the very substance of the so-called negligence claim. See footnote 2, supra.
The claim against Fage in paragraph 37 is not dismissed for reasons previously cited as to the first four counts of the complaint.
The allegations of paragraph 38, can be read as setting forth a simple negligence claim if the complaint is given the most favorable inference against dismissal. The allegation can be read as merely asserting that Fage and the corporate defendants failed to see to it that an employee, such as the plaintiff, would not be made to drive a defective vehicle. That another employee-supervisor ordered the plaintiff to drive the vehicle for reasons based on sexual harassment may be only one component of the failure to supervise allegation — if so, this would not implicate the failure to exhaust administrative remedies requirement. That is, the negligence allegation can be read as asserting that the employer and other supervisors should have secured defective vehicles in such a way or supervise their assignment so that drivers are not made to use them no matter what the motives of the immediate supervisors who made the assignment might be.
The problem with this count, of course, as with all other counts is that each count as it goes along repeats all previous paragraphs, some of which include allegations unrelated to the particular cause of action in the respective count, some of which include specific references to sexual harassment and violations of § 46a-60, which should be barred by CT Page 7982 appropriate exhaustion arguments but which are otherwise unconnected to other factual allegations.
In spite of that, despite the confusion this generates, the court, as noted, must give the complaint that reading which is most favorable when a jurisdictional attack is made upon it.
A request to revise should be filed against this complaint. That would allow the court to more exactly address some of the jurisdictional claims and also more exactly define the permissible issues in dispute between the parties as to the legal claims made in each respective count.
 VI
The fraud count against Fage and the corporate defendants, despite the sexual harassment references in the appended paragraphs, really is not based on a sexual harassment claim. The claim appears to be that the plaintiff was told she could stay home until they figured out what to do with her — but then the defendants used the fact that she stayed home as a pretext to fire the plaintiff.
How this can be the basis of a common law cause of action is certainly a question of interest, but the claim is not subject to subject matter jurisdiction attack. The motion is denied as to this eighth count.
 VII
The defendant corporations have also moved to dismiss the ninth count alleging sexual harassment in violation of Title VII. The first issue raised by the defendants involves the "right to sue" prerequisite for a Title VII claim. The right to sue letter was apparently attached to the amended complaint but not the second amended complaint. The defendants attach it to their motion to dismiss. In Vol. 4 of EmploymentDiscrimination, Larson, 2d edition, § 74.02(1) at p. 74-75, it states:
 "The issuance of a right to sue letter by the EEOC is, absent unusual circumstances, a prerequisite to court action. Some early decisions characterize this as an absolute jurisdictional requirement, but all the more recent decisions hold that the requirement of receipt of the right to sue letter, whether characterized as jurisdictional or as merely a condition precedent, is subject to equitable modification."
CT Page 7983 See Pietras v. Board of Fire Commr's, 180 F.3d 468 (CA. 2, 1999); Bradleyv. Rockland County Mental Health Ctr., 25 F.P. 225 (S.D.N.Y., 1980). Larson further notes some courts have even held that entitlement to receive the letter is sufficient for suit and whether the letter was issued is not important. Id. p. 74-76.
Here, the right to sue letter reflects that the original charge filed with the EEOC was against "Mohegan Sun Casino" and "Sun International Development Group, Inc." But the complaint alleges discrimination by Sun International Hotels, Limited, Sun Cove Limited and Trading Cove Associates. The right to sue letter does not mention these entities.
As to the corporate defendants actually sued, in paragraph 2 of the complaint the plaintiff alleges they "control led" Mohegan Sun Casino "where the plaintiff and the individual defendants all worked. Paragraph 3 further alleges that the three entities sued "ran, supervised, and maintained [the] casino" where all these people worked. The court cannot say whether using the Larson test and that set forth in some of the cases cited by Larson would warrant a so-called equitable waiver of the right to sue requirement. It does not have enough facts before it and the parties never addressed this particular concept.
But assuming that the right to sue letter authorized suit against the three corporations actually sued since they "controlled" the entities mentioned in the right to sue letter, the defendant corporations make a more convincing argument as regards the plaintiff's failure to file her amended complaint claiming sexual discrimination within the 90-day time limit required by 42 U.S.C. § 2000-5 (f)(1). That statute requires that a Title VII complaint be filed within 90 days of the claimant's receipt of an EEOC right to sue letter. See Nearhood v. Tons Markets,Inc., 1999 WL 1133683 (WDNY, 1999). The right to sue letter was mailed April 14, 1999, and the Amended Complaint which refers to sexual harassment for the first time in the litigation was filed July 30th, well after the 90-day period. There does not seem to be any dispute that the Amended Complaint was filed after the 90-day deadline had expired.
The plaintiff argues, however, that the original complaint was filed January 6, 1999, and somehow the sexual harassment allegations should relate back to the date of the original complaint which was filed several months before the right to sue letter was issued.
But the original complaint says not a word about sexual harassment. It talks about reckless and wanton and negligent conduct in having the plaintiff drive the defective vehicle — by harassing her to drive the vehicle the plaintiff is alleged to have suffered emotional distress — making her drive this vehicle was a battery and an assault. The CT Page 7984 foregoing is all the complaint says regarding the actions of the defendants' agents in forcing the plaintiff to drive the vehicle.
Our court has held that the federal courts have given a liberal reading to Rule 15(c) and that our relation back doctrine is akin to that federal procedural rule. Giglio v. C.L.P., 180 Conn. 230; Sham v.Mitchell, 209 Conn. 59, 72 (1988). One of the better guides to Rule 15(c) practice is contained in Federal Practice Procedure, Wright, Miller, Kane, Vol. 6A § 1497, p. 70, et seq.
However, there is a limit to even a liberal practice in this regard. Wright says that: "The fact that an amendment changes the legal theory on which the action was initially brought is if no consequence of the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading," id. pp. 94-95. Thus, an amendment in the federal courts can change a common law claim to a statutory one, set forth a different statutory remedy, shift from a contract to tort theory, pp. 97-98, see numerous cases cited, but there must be fair notice of at least the possibility of a claim based on the original facts alleged. Nothing factually in this original complaint could be said to give any notice that a sexual harassment claim was contemplated or should be expected or warned the defendants that they should prepare their case and the necessary investigation surrounding such a claim based on the possibility that such an allegation would be made. In other words, the gravamen of the original complaint was the negligence or recklessness involved in assigning a worker to drive a defective limousine. How could the defendants be thereby warned that the alleged sexually predatory motive of a supervisor in making the assignment, which was completely unrelated to the performance of company business, would be a factor that might be alleged at some time in the future?
The motion to dismiss the ninth count is granted.
Corradino, J.